Peo. ex rel. Syracuse M. Temple v. Ostrander. 405

Misc.]     .     Supreme Court, December, 1918.

People ex rel. Syracuse Masonic Temple, Relator, v. Charles W. Ostrander, Jr., Peter Grassman, Andrew Goettel and H. Seymour Slocum, as Assessors of the City of Syracuse, N. Y., Defendants.

(Supreme Court, Onondaga Special Term, December, 1918.)

Benevolent Orders Law, § 7 — what is a charitable and benevolent corporation within the meaning of the Tax Law — when exempt from taxation — Tax Law, § 4(7).

Certiorari — to review assessment upon the ground of exemption from taxation — when writ of certiorari quashed — when claim for exemption disallowed — evidence — Benevolent Orders Law, § 7.

A corporation organized under section 7 of the Benevolent Orders Law is a charitable and benevolent corporation within the meaning of the provisions of the Tax Law relating to exemptions.

If the property of such a corporation is used exclusively for benevolent or charitable purposes, or if the entire net income of a building maintained for the meetings of the general assembly of its members or subordinate bodies for one or more of the charities named in the statute, the building is exempt from taxation under section 4(7) of the Tax Law as amended in 1916.

Upon certiorari to review an assessment upon the " Syracuse Masonic Temple " on the ground that it is exempt from taxation under section 4(7) of the Tax Law, it appeared that the building, no part of which is devoted to any ordinary commercial purpose, was erected and is owned by a corporation organized under section 7 of the Benevolent Orders Law and is the place where all the Masonic bodies and lodges of the city have their place of meeting. It further appeared that the social rooms on one of the floors are conducted by and used for the purposes of the " Masonic Temple Club," organized under the Membership Corporations Law, which accepts from an outside caterer, to whom the club leases the restaurant privilege, ten per cent of the gross receipts for the benefit of the members of the lodges to pay their club dues. *Held,* that such arrangement violated. both the letter and the spirit

**406** Peo. ex rel. Syracuse M. Temple *v.* Ostrander.

Supreme Court, December, 1918. [Vol. 105.

of the statute and was destructive of the claim that the building was used exclusively for benevolent or charitable purposes.

While if the entire building were used for a meeting place for the members of the association and subordinate lodges and the net income received from rentals paid by said lodges, if any, was dedicated to some particular charitable purpose contemplated by the statement of objects in the relator's certificate of incorporation, it would be entitled to claim exemption for the entire property under section 4(7) of the Tax Law, as amended in 1916, yet it appearing that the building has produced no profit even with the accretions from outside sources, and even if it had, there being nothing in the constitution of the Grand Lodge of Masons or in the by-laws of subordinate lodges that creates any obligation on the part of relator to dedicate and utilize that profit to any particular purpose, the claim for exemption must be disallowed and relator's petition dismissed and the writ of certiorari quashed.

The testimony of a witness that it was the relator's purpose to turn over to the "Masonic Home at Utica" the net income from the operation of relator's building is not sufficient to uphold a claim for exemption, it appearing that no action has been taken by relator or any of its constituent members obligating it to dispose of its net income, if ever it gets any, in any particular way.

CERTIORARI to review an assessment.

Lyman, Canough & Higbee, for relator.

Stewart F. Hancock, corporation counsel (Carl E. Dorr, Frank W. Harris, of counsel), for defendants.

DAVIS, J. The relator is a corporation organized in 1915 under the Benevolent Orders Law, section 7, which provides: "Any number of Masonic bodies within the state, chartered by the Grand Lodge of Free and Accepted Masons of the State of New York * * * may unite in forming a corporation for the purpose of

acquiring, constructing, maintaining and managing a
hall, temple or other building, or a home for the aged
and indigent members of such order and their depend-
ent widows and orphans, and of creating, collecting
and maintaining a library for the use of the bodies
uniting to form such corporation.'' Four Masonic
lodges in Syracuse united to form said corporation.

The corporation has built and is the owner of the
Syracuse Masonic Temple on Montgomery street in
the city of Syracuse, where all Masonic bodies and
lodges of the city have their place of meeting. The
building is à five-story brick building with basement.
The basement contains heating apparatus, cloak rooms,
lockers, ventilating apparatus, store room and toilet.
On the first floor there are offices for the accommoda-
tion of the corporation, a large room used as a drill
room, for banquets, lectures and balls, a kitchen oper-
ated in connection with the large room for banquets,
and a lodge room. On the second or mezzanine floor is
a balcony connected with a large room, an ante room
and an organ loft. On the third and fourth floors there
are two lodge rooms with ante rooms, dressing rooms,
toilet and storage rooms. On the fifth floor is a direc-
tors' room, a meeting room for the use of the trustees
of the corporation, and social rooms consisting of a
parlor, card rooms, reading rooms, a small kitchen and
a store room, and a billiard room. There are no stores
in the building and no part of the building is devoted to
any ordinary commercial purpose.

In the year 1917, the city assessors made an assess-
ment on the property of $184,500. This proceeding is
to review that assessment, the relator claiming that the
entire property is exempt from taxation.

Subdivision 7 of section 4 of the Tax Law, as
amended by chapter 411 of the Laws of 1916, provides

Supreme Court, December, 1918.        [Vol. 105.

as follows: " The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious * . * * charitable, benevolent * * * purposes * * * and used exclusively for carrying out thereupon one or more of such purposes, · * * * shall be exempt from taxation. But no such corporation or association shall be entitled to any such exemption if any officer, member or employee thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof. for any such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association, or for any of its members or employees, or if it be not in good faith organized or conducted exclusively for one or more of such purposes. * * *. The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes but leased or otherwise used for other purposes, shall not be exempt, but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more of such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion, to the extent of the value of such remaining or other portion shall be subject to taxation; * * * and further provided that the real property of any fraternal corporation, association or body created to build and maintain a building or buildings for its meeting or meetings of the general assembly of its members, or subordinate bodies of such fra-

ternity, and for the accommodation of other fraternal bodies or associations, the entire net income of which real property is exclusively applied or to be used to build, furnish and maintain an asylum or asylums, a home or homes, a school or schools, for the free education or relief of the members of such fraternity, or for the relief, support and care of worthy and indigent members of the fraternity, their wives, widows or orphans, shall be exempt from taxation.''

The purposes and objects of the relator, as stated in its certificate of incorporation, are all those, including those stated in the disjunctive, that are set forth in the sections of the Benevolent Orders Law, and the latter part of subdivision 7 of section 4 of the Tax Law heretofore quoted, in the identical language of the statute; and the foundation was thus laid in forming the corporation for a proper claim for exemption.

It has been judicially determined that a corporation such as the relator is a charitable and benevolent corporation within the meaning of the provisions of the Tax Law relating to exemptions. *People ex rel. Crook* v. *Wells,* 179 N. Y. 257. If, therefore, its property is exclusively used for benevolent or charitable purposes, or if the entire net income of its building maintained for the meetings of the general assembly of its members or subordinate bodies ''is exclusively applied or to be used '' for one or more of the charities named in the statute, then it is legally entitled to such exemption.

It is admitted that during the year 1917 the drill room in the building was rented on one occasion to the ladies of the Jewish Communal Home, a charitable organization, for the sum of $100; that on another occasion its kitchen was rented to the Syracuse *Journal,* a newspaper corporation, for ten dollars. Neither of these parties was in any way connected with the

**410** Peo. ex rel. Syracuse M. Temple *v.* Ostrander.

Supreme Court, December, 1918. [Vol. 105.

Masonic order. There was also held a dedication ball, attended by 2,000 people, invited guests from the members of the Masonic order, and the net receipts of the ball, $2,795.98, were turned over to the relator. While the rule is that exemptions from taxation are not favored and such laws are to be strictly construed (*People ex rel. Andrews* v. *Cameron,* 140 App. Div. 76; affd., 200 N. Y. 585), it would be, it seems to me, too narrow a view to hold that the mere casual or occasional use of a small portion of the property for some purpose other than the principal or main use to which the property was devoted, would thereby vitiate the claim for exemption on the ground that it was not exclusively devoted to benevolent and charitable purposes. A man might lease a room in his residence on one or two occasions for some meeting without having the building lose it character as a dwelling-house.

No one would claim, I apprehend, that the use of a church parlor or even its auditorium on one or two occasions for some secular meeting, would cause the loss of exemption to the religious society on the ground that its property was not used exclusively for religious purposes. The intent of the statute has a broader significance and contemplates the leasing or use of the building at fixed rates of rental for public entertainments and meetings of various kinds, either regularly or as suitable opportunities occur. *People ex rel. Young Men's Association* v. *Sayles,* 32 App. Div. 197; affd., 157 N. Y. 677; *People ex rel. Catholic Union* v. *Sayles,* 32 App. Div. 203; affd., 157 N. Y. 679. Therefore, I think we may dismiss from consideration the two instances of the leasing of small portions of the building. If such leasing were continued and became a fixed policy, the rule would be different. As for the dedication ball, there would, of course, be but one. That inci-

dent alone would not be sufficient to impair the claim for exemption, particularly if the funds were dedicated to the charitable and benevolent purposes of the corporation.

The real difficulty lies in the fact, as it appears from the evidence, that the social rooms on the fifth floor of the club are conducted by a separate corporation, known as the Masonic Temple Club, organized under the Membership Corporations Law, belonging to a league of Masonic clubs. A somewhat complicated arrangement has been entered into between the club and the trustees of the relator, whereby all members belonging to any of the Masonic lodges meeting in the Temple may become members of the club without payment of any dues or initiation, the club retaining the right to impose an initiation fee and dues upon Masons not affiliated with any of the Syracuse bodies. The consideration of this agreement, as to the membership in the club, is that the trustees pay into the treasury of the club one dollar a year for each member of the Masonic lodges, and five cents per year for each member of the higher Masonic organizations. The club, on its part, agrees to return to the treasury of the corporation seventy per cent of such amount paid to it, and on the first day of May in each year sixty-six and two-thirds per cent of all moneys remaining in the treasury of the club at that date. This somewhat confusing arrangement is apparently a device by which all members of the Masonic bodies may have social privileges in the club, and the club shall pay a reasonable rental for the use of the rooms. The club leases a lunch or restaurant privilege to an outside caterer, and the members of the club, and occasionally a few others brought in as friends, may take their lunches in the club room. For this privilege the club receives ten per

412 Peo. ex rel. Syracuse M. Temple v. Ostrander.

Supreme Court, December, 1918.        [Vol. 105.

cent of the gross receipts of the caterer, and therefore reaps a profit. During the year the club paid into the treasury of the corporation $768.88.

It is very evident that this social or club arrangement destroys the claim that the property is used exclusively for benevolent or charitable purposes. The use of a portion of the property for the purpose of a club and the acceptance of a pecuniary profit for the benefit of the members of the lodges to pay their club dues, is a violation of both the letter and spirit of the statute under which exemption is claimed. *People ex rel. New York Lodge No. 1* v. *Purdy*, 179 App. Div. 805.

There remains to consider then, the claim for exemption based on the fact that the " real property of any fraternal corporation created to build and maintain a building for its meeting * * * the entire net income of which real property is exclusively applied to be used to maintain an asylum or asylums," etc.

It appears from the evidence and from the exhibits that there was incorporated in this state in 1864 " The Trustees of the Masonic Hall Fund " (Laws of 1864, chap. 272). This act has been amended by chapter 503 of the Laws of 1873, chapter 350 of the Laws of 1877, chapter 55 of the Laws of 1885, chapter 105 of the Laws of 1890 and chapter 66 of the Laws of 1898. This corporation was created to build and maintain the Masonic Hall in the city of New York for the meetings of the grand lodge or general assembly of Masons, and out of the fund derived from the rent, income or other sources to build, establish and maintain an asylum or asylums, school or schools for the free education of the children of Masons, and for the relief of worthy and indigent Masons, their widows and orphans. Subsequently, this Masonic Hall was built in New York city, and eventually a Masonic Home

was built in the city of Utica where indigent Masons, their widows and orphans were cared for. The legislature permitted, by the amendment of 1873, the corporation to rent such parts of said Masonic Hall in New York city to individuals or corporations for mercantile and other uses and purposes, and to use and appropriate the funds to be derived from such rent for the benevolent, educational and charitable purposes mentioned in the act in incorporating the trustees of the Masonic Hall fund. That corporation has dedicated the use of its property to the purpose of maintaining the Masonic Home. It is exempt from taxation; and apparently it has been the purpose of the legislature and the Tax Law to make general the law exempting a body engaged in such a charitable enterprise, for the language of the present statute relating to exemptions follows practically *verbatim* the statute just quoted.

But it is not by an act of incorporation, stating all the purposes of charitable and benevolent acts in the language of the statute, that such a corporation becomes entitled to exemption. It is by dedicating and applying certain net income and profits to a definite purpose that its claim may be recognized. It is doubtful if, without specific legislative authority, a corporation like the relator would be entitled to rent part of its building for commercial purposes and then apply the net profits to charitable work. It is apparently contemplated that the income from the rental of the building to the subordinate lodges, or to the various lodges for their purposes, would be, as it should be, sufficient for the payment of the expenses and upkeep of the building, interest on the investment, with a profit or income besides. The building of the relator has produced no such profit, even with the accretions from out-

side sources that I have enumerated. Had it produced a profit, there is no obligation to dedicate and utilize that profit to any particular purpose. I find nothing in the constitution of the grand lodge or in the by-laws of the subordinate lodges that creates any obligation on the relator to contribute to the Masonic Home at Utica. A witness testifies, " The Syracuse Masonic Temple itself does not maintain in the city of Syracuse a home for the care of indigent or helpless members of the fraternity; that it is the purpose of this corporation to turn over to the Masonic Home at Utica the net income from the operation of the building, which is located on the premises in question." Apparently, no resolution of the board of trustees has been adopted, and no action has been taken by the corporation or any of its constituent members making it obligated to dispose of its net income, if it ever gets any, in any particular way. A mere unformed and indefinite purpose, based merely on the declaration of a witness, to devote net income when it gets one, to a particular purpose, is not sufficient. There must be a definite appropriation of the fund to one or more of the purposes specified in the statute. *People ex rel. Delphian Lodge* v. *Cahoon,* 179 App. Div. 287.

Undoubtedly the corporation would be entitled to an exemption for such portion of its property as was being used entirely for fraternal, benevolent or charitable purposes; but that question is not presented here. The claim is for entire exemption. If the entire building were used for a meeting place for the members of the association and subordinate lodges, and the net income received from the rentals paid by those lodges, if any, dedicated to some particular charitable purpose contemplated by the statement of its objects and purposes in the certificate of incorporation, the corporation would be entitled to claim exemption for the entire

property. But, as I have already stated, such are not the facts.

It follows that the petition of the relator must be dismissed and the writ of certiorari quashed.

Petition dismissed and writ quashed.