# CHRISTIAN BUSINESS MEN'S COMMITTEE OF MINNEAPOLIS, INC. v. STATE.[1]

March 4, 1949.

No. 34,705.

[1]Reported in 38 N. W. (2d) 803.

*Maurice H. Rieke,* for appellant.

*Michael J. Dillon,* County Attorney, and *Edward J. Shannon,* Assistant County Attorney, for the State.

MATSON, JUSTICE.

Appeal from an order denying petitioner's motion for amended findings of fact or a new trial in a proceeding by petitioner to have certain real property declared to be exempt from real estate taxes for the year 1946 and subsequent years.

Petitioner, under an executory contract for deed dated October 13, 1945, is the equitable owner of the real property described in its petition, which in aggregate embraces the land constituting all of lot 1, Auditor's Subdivision 126, Hennepin county, Minnesota. The property, which is located in the downtown business section of the city of Minneapolis on the southwest corner of Ninth street and Hennepin avenue, is improved with a three-story building with a 50-foot frontage on Hennepin avenue and 100 feet on Ninth street. Immediately adjoining this structure, with an 18-foot frontage on Hennepin, is a one-story building 60 feet long. Connected with and immediately to the rear of the three-story structure is a two-story garage building 26 x 33 feet in size.

Petitioner is a nonprofit corporation organized under the general provisions of the social and charitable corporation laws of Minnesota for the purposes expressed in its corporate charter as follows:

"A. To organize and unite Christian laymen for the winning of souls to Jesus Christ.

"B. To conduct evangelistic services, prayer meetings and radio broadcasts of the gospel of Jesus Christ in Minneapolis, Minnesota and vicinity.

"C.   To engage in tract and gospel distribution.

"D.   To encourage the study of the Bible as the true word of God."

In the tax year of 1946 the property was occupied and used as follows:

(a) *Ground floor*. The ground floors of all three structures in their entirety were leased to commercial tenants who operated a restaurant, a florist shop, and an army and navy store, subject to the exception that the florist shop and the first floor of the garage were used by petitioner for a few months in connection with a clothing drive. The restaurant yielded petitioner a monthly rent of $150 for the first two months and $175 thereafter. The florist shop paid a monthly rental of $225. The army and navy store—occupying the corner space and the first floor and basement of the garage building—paid $350 a month. The 1946 gross rental income for the ground floor was about $8,700, and such rental for 1947 will approximate $9,250. All first-floor leases expire February 28, 1948.

(b) *Second and third floors and basement (except basement of garage)*. All of the second and third floors, as well as the basement, throughout 1946 were used exclusively by petitioner for its program of activities conducted under the name of The Hospitality House. These floors house petitioner's general offices and are equipped with lounges, library, assembly and game rooms, dining room and kitchen, wash and powder rooms, and storage space. The roof is equipped with a signboard conveying a gospel message. Long prior to its purchase of the premises, in fact since about November 1943, petitioner under a lease operated a Christian Hospitality Center for the members of the armed forces, to whom it provided, without charge, sleeping quarters, meals, baths, lounge-room space, writing materials, and spiritual guidance. The demand for the servicemen's program commenced to decrease in 1944. In 1946, the decrease was substantial, and at that time petitioner commenced the conversion of the upper floors into a youth center and as a regular meeting place for various clubs, societies, and church organizations interested in promoting a Christian way of life. These organizations so

using petitioner's premises are independent of and in no sense subordinate to or sponsored or controlled by petitioner. Noon and evening meals have regularly been served to the members of these organizations, to members of petitioner's staff, and incidentally to members of the general public. Among the services available is a nursery where children may be left by mothers who are shopping downtown. As long as there was need for the servicemen's program, interdenominational religious worship was conducted on Sunday mornings. Throughout the week, the premises had been available as a youth center where young folks might gather for study, for refreshment, to meet friends, and to engage in games and other social activities. On Fridays, Saturdays, and Sundays, the youth activities are closed with song and informal religious services. A clergyman, a regular member of the staff, acts as chaplain in giving spiritual guidance to youth who have been brought into juvenile court; he also assists in finding Christian homes for the placement of children under the guidance of the probation office. Another staff member is a full-time evangelist, who appears before various denominations and before factory worker and high school student meetings throughout the northwest to show special religious films and to point out how the Hospitality House may be of service to young people living in or visiting Minneapolis. Religious broadcasts are given over the radio. Petitioner also sponsors special Christian work among high school students.

At the time of the hearing before the trial court in November 1947, petitioner presented evidence to establish that it had formulated plans for converting the ground floor to its own purposes in the following manner:

(a) Upon the expiration of the lease for the restaurant on February 28, 1948, the tenant was to be permitted to remain on a month-to-month basis "until such time, a little later in the year," when petitioner could remodel this portion of the first floor for use as a nonsectarian chapel with regular noonday and evening services.

(b) The corner or army and navy store space, and also the first

floor of the garage, covered by a lease expiring February 28, 1948, to be possibly remodeled in 1948—depending upon petitioner's experience with the food service on the second floor—to permit petitioner to operate a restaurant catering to the general public on a cost basis with the express motive of using that operation as a means of giving petitioner a chance to reach the general public on a spiritual plane; in other words, the food service would be used as a method of making new contacts.

(c) The space occupied by the florist shop upon the expiration of the lease was to be converted in part into a book and gospel literature store or depot. Part of this area was to be used in providing a number of religious organizations with office space for which a certain charge might be made.

The trial court found that during 1946 and at all times since the said real property has not been used for church purposes or as a house of worship and is not church property, and that it has not been exclusively used for purely public charity within the meaning of Minn. Const. art. 9, § 1, which provides:

"* * * all churches, church property and houses of worship," and "institutions of purely public charity, * * * shall be exempt from taxation, * * *."

In order for any institution to qualify for tax exemption under Minn. Const. art. 9, § 1—and M. S. A. 272.02 enacted pursuant thereto—there must be a concurrence of *ownership* of the property by an institution of the type prescribed by the constitution and a *use* of the property for the purpose for which such institution was organized.[2] In the instant case, the necessary element of ownership exists, in that petitioner qualifies as an institution of purely public charity. It is a Christian laymen's organization dedicated to the unselfish purpose of teaching and exemplifying the gospel by precept and by a beneficent service extended to all members of the public

[2]State v. Ritschel, 220 Minn. 578, 20 N. W. (2d) 673; State v. Willmar Hospital, Inc. 212 Minn. 38, 2 N. W. (2d) 564; 11 Minn. L. Rev. 541; 51 Am. Jur., Taxation, § 539.

without regard to race or creed. Fundamentally, petitioner's general purpose is to promote the moral and educational welfare of youth by bringing them under religious influences for the improvement of their characters and for the stimulation in them of higher ideals of life and conduct. It follows that the controlling issue herein is whether the property is devoted exclusively to a proper use.

■ Inasmuch as taxation is the rule and exemption is an exception in derogation of equal rights, there is a presumption that all property is taxable. Therefore he who seeks tax exemption bears the burden of proof.[3] Whether the use to which the property has been devoted justifies tax exemption is a question of fact, which has here been determined adversely to petitioner by the trial court. In the light of the controlling legal principles, was that determination correct?

■ We turn first to a consideration of the use to which the first floor has been devoted. It has been practically in its entirety rented to lessees who have been in business for themselves. The renting of property to third parties, although the entire rental received therefrom be devoted exclusively to charitable purposes, is not a purely public charitable use of the property within the meaning of Minn. Const. art. 9, § 1, which provides that "institutions of purely public charity, * * * shall be exempt from taxation." The word "purely" means "wholly," "solely," and "exclusively" in such exemption provisions and qualifies the use that may be made of the institution's property. State v. Willmar Hospital, Inc. 212 Minn. 38, 41, 2 N. W. (2d) 564, 566. What is meant by a purely or exclusively charitable use of property is a direct, immediate, and actual application of the property itself to the purposes for which the charitable institution is organized. It is the direct and immediate use of the property, and not the use of the income therefrom, that is determinative of whether the property is used for tax-exempt purposes. See, Y. M. C. A. v. Lancaster County, 106 Neb. 105, 182 N. W. 593, 34 A. L. R. 1060, with Annotation. This rule is appli-

[3]State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882; St. Peter's Church v. County of Scott, 12 Minn. 280 (395); 11 Minn. L. Rev. 541, 549.

cable to a church or religious society as well as to charitable institutions. See, County of Anoka v. City of St. Paul, 194 Minn. 554, 558-559, 261 N. W. 588, 590, 99 A. L. R. 1137; State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882; State v. St. Barnabas Hospital, 95 Minn. 489, 104 N. W. 551; State v. Carleton College, 154 Minn. 280, 191 N. W. 400; and State v. Union Congregational Church, 173 Minn. 40, 216 N. W. 326, wherein it was held that real property owned by a variety of institutions entitled to tax exemption was subject to taxation even though the income derived from such property was devoted to the support of such institutions. This is the majority rule.[4] There is, of course, a difference between leasing part of a building for business and the mere occasional rental of a part thereof for social gatherings. See, People ex rel. Graff v. Passavant Memorial Hospital, 342 Ill. 193, 173 N. E. 770; People ex rel. Syracuse Masonic Temple v. Ostrander, 105 Misc. 405, 173 N. Y. S. 356; Bd. of Foreign Missions v. Bd. of Assessors, 244 N. Y. 42, 154 N. E. 816; 2 Cooley, Taxation (4 ed.) §§ 685, 686.

■ Petitioner asserts, however, that, although the first floor is rented to third parties, it is entitled to tax exemption under the rule that, as an incident of tax exemption, it has a reasonable time in which to adapt newly acquired property for the purposes for which it was organized. In support of its contention, we have the citation of State v. Second Church of Christ, Scientist, 185 Minn. 242, 240 N. W. 532, and Village of Hibbing v. Commr. of Taxation, 217 Minn. 528, 14 N. W. (2d) 923. In the Second Church of Christ,

---

[4]Bd. of Foreign Missions v. Bd. of Assessors, 244 N. Y. 42, 154 N. E. 816; First M. E. Church v. City of Chicago, 26 Ill. 482; People ex rel. Graff v. Passavant Memorial Hospital, 342 Ill. 193, 173 N. E. 770; Evangelical Lutheran Synod v. Hoehn, 355 Mo. 257, 196 S. W. (2d) 134; Lois Grunow Memorial Clinic v. Oglesby, 42 Ariz. 98, 22 P. (2d) 1076; City of Lewiston v. All Maine Fair Assn. 138 Me. 39, 21 A. (2d) 625; Bd. of Equalization v. Tulsa Pythian Benevolent Assn. 195 Okl. 458, 158 P. (2d) 904; American Sunday School Union v. City of Philadelphia, 161 Pa. 307, 29 A. 26, 23 L. R. A. 695; Boston Symphony Orchestra, Inc. v. Bd. of Assessors, 294 Mass. 248, 1 N. E. (2d) 6; 2 Cooley, Taxation (4 ed.) §§ 686, 741; Annotations, 34 A. L. R. 634 and 62 A. L. R. 328.

Scientist, case, an architect had been employed, plans had been drawn, the contract for the construction had been let, and in fact the improvements were nearing completion at the time of trial, and from the time of purchase the property had yielded only a small incidental income amounting to much less than the taxes claimed. In the Village of Hibbing case, the institution seeking tax exemption had purchased a hospital property by contract for deed dated January 11, 1941, and 39 days later, on February 19, 1941, a contract of construction had been let and the entire work of remodeling and building was completed in January 1942. There was no evidence that any appreciable income was derived during the period of construction. In the instant case, we have an entirely different situation, involving outstanding commercial leases with a considerable period to run before expiration, a substantial income from the lessees amounting in gross to $8,700 per year, and an absence of anything concrete having been done to effect an adaptation or remodeling of the property. Under the circumstances, it would have been error to grant tax exemption. Clearly, a substantial commercial income may not be enjoyed for any considerable period of time upon the theory that the property will in the future be converted to a tax-exempt purpose. A use of a property which merits tax exemption is a present use and not an intended future use, subject, however, to the proviso that where a corporation or other institution entitled to hold its property exempt from taxation acquires property with the intention of devoting it to a tax-exempt use, the right of exemption carries with it, as an incident, the opportunity to adapt and fit the property for use within a reasonable time in execution of plans or arrangements made for the purpose, but during the period of adaptation the right of tax exemption does not exist if and when the property so purchased yields a substantial commercial income. Cf. State v. Second Church of Christ, Scientist, and Village of Hibbing v. Commr. of Taxation, *supra*. Whether due diligence has been exercised in adapting the property

558

to a tax-exempt purpose is a question of fact to be decided according to the circumstances of each case.[5]

We have so far considered only the use of the first floor, which clearly is not a tax-exempt use. In none of our prior decisions have we given consideration to the issue of whether the exempt and nonexempt portions of a building are separable for the purposes of assessment for taxation so as to permit the former to be held nontaxable and the latter taxable.[6] The assumption apparently has always been that a building must necessarily be treated as a single unit which is not divisible for the purposes of taxation. According to this heretofore unchallenged assumption, the trial court was right in finding that the property as a single tax unit had not been primarily used for purely public charitable purposes. In the light, however, of modern conditions involving the construction of large buildings, often consisting of many stories, there seems little justification for adhering to an assumed arbitrary rule of thumb that a building is necessarily taxable or nontaxable in its entirety. Big buildings have become the rule in the congested business areas of

[5]The court expresses no opinion as to whether petitioner's proposed future use of the first floor will constitute a use justifying tax exemption.

[6]In County of Ramsey v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783, 11 L. R. A. 175, and State v. Union Congregational Church, 173 Minn. 40, 216 N. W. 326, tax exemption was limited to *all property reasonably necessary for and primarily used and devoted to the proper purposes of the institution.* There is nothing in the above rule or in the above decisions that requires a particular piece of property to be considered as an indivisible unit. Obviously, the word "property" may be applied to a portion of a building as well as to the entire building. Only a portion of a building may be *reasonably necessary for and primarily devoted to the proper purposes of the institution,* and thus come within the tax exemption. This court has never applied the primary-use test, or any other test, to the express question of whether a building is divisible into tax-exempt and nontax-exempt portions according to the use to which each portion is devoted. *It is recognized that "the better rule, probably most often adopted, is that the portion used primarily for religious purposes is exempt from taxation, while the remainder is not."* 11 Minn. L. Rev. 541, 548; 2 Cooley, Taxation (4 ed.) § 688; see further citations in footnote 7, *infra.*

large cities where ground space is at a premium. The passage of time does not of itself amend the constitution, but it does amend the factual problems, human and physical, to which the constitution applies. If the purpose of tax exemption is to be achieved, we cannot ignore significant changes which have taken place in our physical surroundings. A tax-exempt institution obviously should not be denied the opportunity of acquiring an advantageous location in a congested downtown area simply because it may not be able to occupy for its restricted purpose an entire building consisting of several floors. Although it is a general rule that constitutional provisions exempting property from taxation are to be strictly construed, such provisions, though not subject to extension by construction or implication, are to be given a reasonable, natural, and practical interpretation in the light of modern conditions in order to effectuate the purpose for which the exemption is granted. The better rule, which we now adopt and which is followed by many other jurisdictions wherein property is entitled to tax exemption only if it is used *exclusively* for a tax-exempt purpose, is that when a building is owned by a charitable or other tax-exempt institution and one *substantial* part thereof is directly, actually, and exclusively occupied by such institution for the purposes for which it was organized and another *substantial* portion thereof is primarily used for revenue by rental to the general public, such building with the grounds thereof is pro rata exempt from taxation and pro rata taxable according to its separate uses, and it should be assessed and taxed on that portion of its proper assessable value allocated to the taxable use, after deducting from its over-all assessable value the portion thereof properly allocated to the proportionate tax-exempt use.[7] In Cleveland Library Assn. v. Pelton, 36 Ohio St. 253,

[7] Y. M. C. A. v. Lancaster County, 106 Neb. 105, 182 N. W. 593, 34 A. L. R. 1060; Oklahoma County v. Queen City Lodge, 195 Okl. 131, 156 P. (2d) 340; Bd. of Equalization v. Tulsa Pythian Benevolent Assn. 195 Okl. 458, 158 P. (2d) 904; Bd. of Home Missions, etc., v. City of Philadelphia, 266 Pa. 405, 109 A. 664; City of Philadelphia v. Barber, 160 Pa. 123, 28 A. 644; Cleveland Library Assn. v. Pelton, 36 Ohio St. 253; State ex rel. Cunningham v. Bd. of Assessors, 52 La. Ann. 223, 26 So. 872; Annotation,

261, in which certain rooms on each floor of a building were rented out, and were therefore not exempt, it was held:

"The fact that the building is so constructed that the parts leased or otherwise used with a view to profit cannot be separated from the residue by definite lines, is no obstacle to a valuation of such parts for purposes of taxation, having due reference to the taxable value of the entire property."

Where, as here, we have divisions within the buildings by floors— or by rooms of a substantial size—there is no insurmountable difficulty in effecting an apportionment.[8] Likewise, there is no insurmountable difficulty in enforcing a collection of the tax. A substantial and certain fractional part of realty obviously may be sold for nonpayment of an ad valorem tax, and in the event the purchaser thereby ultimately acquires a title in fee he may, if necessary, segregate or sell his interest therein through partition proceedings. See, M. S. A. 558.01 to 558.32. In State v. Pequot Rural Tel. Co. 188 Minn. 520, 247 N. W. 695, we have an example of a case where it was impractical to apportion the property, in that the alleged taxable interest was incidental, trivial, and wholly insubstantial.

■ We turn next to a consideration of whether the operation of the premises actually occupied by petitioner for its own activities, namely, the second and third floors and the basement and also the part of the roof on which a signboard carries a gospel message, is exclusively used for a purely public charity so as to be entitled to tax exemption. We think it is. The maintenance of a youth center

---

118 A. L. R. 861; 2 Cooley, Taxation (4 ed.) § 688; 11 Minn. L. Rev. 541, 548; 51 Am. Jur., Taxation, § 498; Hodge v. City of Moose Jaw [1925] 19 Sask. L. R. 369, 2 Dom. L. R. 593, 1 Western W. R. 948; see, City of Mattoon v. Graham, 386 Ill. 180, 53 N. E. (2d) 955; State ex rel. The Cragor Co. v. Doss, 150 Fla. 491, 8 So. (2d) 17; Parker v. Quinn, 23 Utah 332, 64 P. 961.

[8]Failure to use due diligence in asserting a right to tax exemption may constitute a waiver of the right. See, Broderick v. City of Yonkers, 22 App. Div. 448, 48 N. Y. S. 265; Sanitary District v. Hanberg, 226 Ill. 480, 80 N. E. 1012.

where young people may gather for recreation in a wholesome atmosphere undoubtedly is a contribution to the public good. The other activities are beneficent and charitable. The only question that can arise is with respect to the food service maintained on the second floor, but upon the evidence presented it appears to be a service incidental to petitioner's charitable activities and to be reasonably necessary in the furtherance of its purely charitable program. It has not been operated for the purpose of deriving a profit. An institution of purely public charity enjoys tax exemption only with respect to property—and not with respect to the income therefrom—*presently, exclusively,* and *directly* applied to, and actually used in, the promotion of its charitable purposes; but such property may in part, without loss of the tax-exemption privilege, be devoted to activities which of and by themselves are normally commercial, such as the operation of a restaurant and similar services, *if such restaurant or other services are subordinate to, and are reasonably necessary in meeting a need integrated with, its purely charitable program*—such as providing reasonably satisfactory accommodations for the institution's personnel and charitable activities clientele—and such tax-exemption privilege is not lost although such food or other services are incidentally and without deliberate design made available to the general public.[9] The serving of meals is a valuable auxiliary to the work of a charitable institution in getting groups together at mealtime, which is the best, and in many cases the only practicable, opportunity to arouse their interest in its program. It is one of those facilities which makes the premises attractive to, and convenient for, participants in the institution's activities.

The order of the trial court is reversed and the cause remanded

---

[9]See, State v. Carleton College, 154 Minn. 280, 286, 191 N. W. 400, 403, wherein dormitory property was held reasonably necessary for the educational purposes of the college; Y. M. C. A. v. Lancaster County, 106 Neb. 105, 182 N. W. 593, 34 A. L. R. 1060; State ex rel. Spillers v. Johnston, 214 Mo. 656, 113 S. W. 1083, 21 L.R.A.(N.S.) 171.

562

with instructions to ascertain the taxable value of the taxable portion of petitioner's property in accordance with this opinion.

Reversed.

PETERSON, JUSTICE (dissenting).

Long ago, in County of Ramsey v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783, 11 L. R. A. 175, our law was settled to the effect that property owned by a church or a religious body was exempt from taxation if it was used *primarily* for religious purposes; otherwise not. As we there held, the "test" for determining exemption is "the *primary* use to which the property is put." (Italics supplied.) Applying the rule there to a fact situation similar in all respects to the one here, we held that property "would not possess the character necessary to exempt it [from taxation] merely because some part of it should be used for religious purposes, while its *primary* and *chief* use was for secular purposes." (Italics supplied.) Here, as there, the property in question is not exempt under the rule.

We have not only never deviated from the rule of the cited case, but have reiterated it in later cases. For example, in State v. Union Congregational Church, 173 Minn. 40, 44, 216 N. W. 326, 328, we said:

"No hard and fast rule can properly be laid down to govern all cases. Generally speaking, it may be said that the rule governing exemption from taxation as to the real property of educational institutions is that all property reasonably necessary for and *primarily* used and devoted to the proper purposes of the institution and so located with reference to the main buildings or activities of the institution as to be reasonably suitable for such purposes is exempt from taxation." (Italics supplied.)

We applied the test in State v. Second Church of Christ, Scientist, 185 Minn. 242, 240 N. W. 532.

Under the rule, a particular piece of property is considered as a unit in determining whether it is exempt from taxation, and the test is applied to it as such. Accordingly, the property is either wholly tax-exempt or wholly tax-liable. In such cases, there can be

no middle ground—there can be no such thing as partial tax exemption and partial tax liability at one and the same time.

Constitutional and statutory provisions of other states relating to exemption of property owned by churches and religious corporations vary to a considerable extent (see, 2 Cooley, Taxation [4 ed.] § 742; 51 Am. Jur., Taxation, § 614), and, because that is true, authorities from other jurisdictions have little value here, except where they involve constitutional and statutory provisions similar to ours. Authorities from other jurisdictions involving exemption provisions similar to ours follow the rule announced by us in County of Ramsey v. Church of the Good Shepherd, *supra*. People ex rel. Baldwin v. Jessamine Withers Home, 312 Ill. 136, 143 N. E. 414, 34 A. L. R. 628; People ex rel. Thompson v. First Congregational Church, 232 Ill. 158, 83 N. E. 536 (citing County of Ramsey v. Church of the Good Shepherd, *supra)* ; Gray, Limitations of Taxing Power, § 1334; 51 Am. Jur., Taxation, § 614, note 11.

In State v. Pequot Rural Tel. Co. 188 Minn. 520, 522, 247 N. W. 695, 696, in analogy to the rule in true tax-exemption cases, we held that the question whether real property of a telephone company paying gross earnings taxes in lieu of property taxes was exempt from property taxes depended upon whether the property was *"principally* devoted to telephone use." (Italics supplied.)

The decisions of the supreme court of Nebraska have varied according to the constitutional and statutory provisions considered. In Ancient and Accepted Scottish Rite v. Board of Co. Commrs. 122 Neb. 586, 241 N. W. 93, 81 A. L. R. 1166, the court reviewed its prior decisions, including that of Y. M. C. A. v. Lancaster County, 106 Neb. 105, 182 N. W. 593, 34 A. L. R. 1060, and said (122 Neb. 604, 241 N. W. 99) :

"In this jurisdiction it is not the character of the owner but the nature of its use which must in each individual case furnish the test for determining the tax exempt character of the property involved. If that use be truly and exclusively religious, or exclusively educational, or exclusively charitable, or a combination of the three

uses, and involves no other use, for the reasons expressed in the cases cited, we are not concerned as to whether it be strictly a public charity or a private charity in the technical sense of these terms. * * *

*"So, too, we are committed to the doctrine that, in determining whether or not property falls within a tax exemption provision, the primary or dominant use, and not an incidental use, will control. * * *"*

The Annotation in 81 A. L. R. 1178 states the prevailing rule in accordance with our decisions as follows:

"It is the *primary* use to which property is put which determines the question whether it is exempt from taxation. If it is devoted primarily to a religious purpose, an incidental use for another purpose will not destroy the exemption, but an incidental use for religious purposes, of property whose primary use is for another purpose, will not warrant exemption." (Italics supplied.)

I think we should affirm.

### ON PETITION FOR REARGUMENT.

On August 19, 1949, the following opinion was filed:

PER CURIAM.

The petition for reargument is denied.

The absence of special statutory machinery for assessing property on the basis that a single parcel may be pro rata exempt from taxation and pro rata taxable according to its separate uses presents no practical difficulty. There is nothing to indicate that the legislature ever intended to exempt an interest or right in property merely because the tract or building in question might otherwise be exempt. Pursuant to M. S. A. 272.01, all real and personal property is taxable *except such as the law exempts from taxation.* Nothing in that statute, or in succeeding statutory sections—inclusive of the definitive provisions of § 272.03—justifies the inference that a prop-

erty right or interest (whether it be divided or undivided) in realty is not taxable because such realty is otherwise exempt. All properties are presumed to be taxable. Freedom from taxation for a charitable purpose is founded on a proper charitable use and not on the basis of whether a property right or interest is interwoven with other rights or interests which enjoy exemption. In other words, liability or nonliability to taxation does not depend upon the ease or difficulty of segregating taxable interests from those which are not taxable.

Section 272.14, which provides for the recording of an instrument conveying an undivided part upon the payment of a proportional part of the taxes due on the parcel as a whole, clearly indicates that an undivided fractional share of a parcel may be taxed separately. It is true that this section refers to taxes which are already assessed and due; nevertheless, it does show that the tax burden on a single unit may be apportioned. As a practical matter, the tax upon a parcel obviously may be apportioned by the assessor as well as by the county auditor or other county official. The legislature through our redemption statutes (§§ 281.06-281.11) has authorized, and recognized the feasibility of, apportioning and determining the tax burden that should be allocated to any fractional portion of a single parcel, whether such fractional portion be divided or undivided. See, State ex rel. Central Hanover B. & T. Co. v. Erickson, 212 Minn. 218, 3 N. W. (2d) 231; In re Petition of S. R. A. Inc. 219 Minn. 493, 513, 514, 18 N. W. (2d) 442, 453, affirmed, 327 U. S. 558, 66 S. Ct. 749, 90 L. ed. 851.

The practicability of assessing and taxing a fractional or special interest in a parcel of land which is otherwise exempt has been recognized by this court for a period of over 50 years. See, Pine County v. Tozer (1894) 56 Minn. 288, 57 N. W. 796, involving an appeal in a proceeding to enforce the payment of delinquent taxes for the year 1887 upon the right and interest of David Tozer, *et al.,* in the standing timber upon a tract of land which was owned by a railroad as tax-exempt property. In that case, the railroad company by contract had sold to David Tozer, *et al.,* the right to cut

and remove from such tax-exempt land all merchantable pine timber thereon. The right to remove and dispose of timber was held to be a taxable property right though such right did not embrace the entire fee. It is true that the legislature had in that instance specifically directed that any estate or interest conveyed by a railroad company out of its tax-exempt lands should be taxable to the purchaser, but in no respect did the legislature provide any special machinery for assessing the value of a fractional or other special interest that might be so conveyed. In other words, it was assumed that any fractional right in such lands could be valued for taxation like other property. The feasibility of assessing for taxation fractional and undivided interests in real estate, without providing special statutory machinery therefor, has been recognized by the legislature with respect to mineral, gas, coal, oil, and other similar special interests in real estate owned separately and independently of the fee. See, §§ 272.04 and 272.05. If it were impractical to assess and determine the value of fractional or special interests in real estate, no doubt the legislature would have been called upon to provide a remedy at some time during the many years that have elapsed since the decision in Pine County v. Tozer was handed down in 1894.

Respondent also foresees difficulty in determining whether a portion of a building devoted primarily to a tax-exempt use (or a taxable use, as the case may be) is *substantial.* These forebodings of difficulty stem largely from a failure to consider the majority opinion as a whole in construing and applying the rule therein enunciated. The emphasis upon a phrase isolated from its context—such as "rooms of a substantial size"—naturally results in a distortion of the meaning of any opinion. What is a *substantial* portion of a building is a question of fact to be determined in the light of a reasonable, natural, and practical interpretation of that term. This question of fact is no more difficult of determination than the fact question of whether the use of certain property is *primarily* for revenue or for charity. As already indicated, our decision in State v. Pequot Rural Tel. Co. 188 Minn. 520, 247 N. W. 695, is an ex-

ample of the practical manner in which a determination may be made as to whether a certain use is *substantial*. Forebodings of difficulty in application of the rule to YMCA, Salvation Army, and similar buildings are likewise equally unjustified. Whether dormitory and other rooms are reasonably necessary in meeting a need integrated with a program of a charitable or educational institution presents a problem that will be no more difficult in the future than it was in the Carleton College case. (See, footnote 9 of majority opinion.) It may be conceded that any rule of law, though it be wise and reasonable in all its terms, may be misapplied through sincere error or through an over-zealous and narrow application by those charged with its administration, but such isolated errors of application will in the future, as in the past, be subject to correction by the courts.

We have not failed to consider certain opinions of the attorney general to the contrary, but with them we do not agree.

PETERSON, JUSTICE.

I dissent.