STATE OF MINNESOTA

IN SUPREME COURT

A23-0737

Tax Court                                                                        Anderson, J.

Alliance Housing Incorporated, et al.,

      Respondents,

vs.                                                                              Filed: March 27, 2024
                                                                                 Office of Appellate Courts
County of Hennepin,

      Relator.

_____

Adam J. Pabarcus, Brooke M. Hein, Larkin Hoffman Daly & Lindgren, Ltd., Minneapolis, Minnesota, for respondents.

Mary F. Moriarty, Hennepin County Attorney, Rebecca L.S. Holschuh, Assistant County Attorney, Christopher Beach, Certified Student Attorney, Minneapolis, Minnesota, for relator.

_____

S Y L L A B U S

For purposes of qualifying for tax exemption under Article X, Section 1, of the

Minnesota Constitution, an institution of purely public charity with a purpose of providing

housing for low-income individuals uses its real property in furtherance of its charitable

purpose when it leases its property to its intended beneficiaries for personal residence.

Affirmed.

1

ANDERSON, Justice.

We are asked here to determine whether an institution of purely public charity "uses" its property in furtherance of its charitable purpose when a charity created to provide housing for low-income individuals leases property to its intended beneficiaries for personal residence. The tax court found that respondents so used their properties. Because we agree, we affirm.

**FACTS**

Respondents Alliance Housing Incorporated and North Penn Supportive Housing LLC (collectively referred to as Alliance) are Minnesota nonprofits operating "to create, own, and operate affordable housing for low and very low-income people." Alliance owns several properties in Minneapolis, which are used exclusively as private residences for tenants whose incomes are 30–50 percent of the area median income. Alliance imposes no other restrictions on housing eligibility. All its units are rented at below market rates, and its tenants remain, on average, for 3 years in a unit. Alliance provides some supplies and cleaning services to various units but does not occupy the properties. Some of the properties owned by Alliance have been consistently classified as tax-exempt, while others—operating in exactly the same way—have been taxed.

In late 2018, Alliance applied for tax exemption for all its properties in assessment year 2020. The Minneapolis City Assessor denied the applications. Instead, the Assessor classified some of Alliance's properties for taxation purposes as Class 4d, qualifying low-income rental housing, under Minn. Stat. § 273.13, subd. 25(e) (2022). Others were

classified as Class 4a, 4b, and 4bb single and multiple unit residential housing under Minn. Stat. § 273.13, subd. 25(a)–(c) (2022).[1]

Alliance then filed a property tax petition for the assessment year 2020, payable in 2021, claiming that its properties were tax-exempt. After a trial and briefing by the parties, the tax court concluded that the properties owned by Alliance were exempt from property taxes. The court found that Alliance had carried its burden to prove the Assessor's classification incorrect and that it satisfied both elements for tax exemption because it: (1) qualified as an institution of purely public charity under Minn. Stat. § 272.02, subd. 7(a) (2022); and (2) used its properties in furtherance of its charitable purpose. *All. Hous. Inc. v. County of Hennepin*, No. 27-CV-20-7738, 2023 WL 2604570, at *24 (Minn. T.C. Mar. 22, 2023). Hennepin County (the County) appeals, conceding that Alliance qualifies as an institution of purely public charity but challenging the tax court's finding that Alliance "used" its properties for an exempt purpose when it leased them to "non-exempt third part[ies] . . . for use as a personal residence."

## ANALYSIS

We have jurisdiction to review a final order of the tax court on the grounds that it was without jurisdiction, that its order was not justified by the evidence or was not in conformity with the law, or that it committed any other error of law. Minn. Stat. § 271.10, subd. 1 (2022). We review the tax court's legal conclusions de novo and its factual findings

---

[1]     Some of Alliance's properties were not classified as Class 4d, qualifying low-income rental housing, because they were not certified to the Minneapolis City Assessor by the Housing Finance Agency under Minn. Stat. § 273.128, subd. 3 (2022).

for clear error. *Cont'l Retail, LLC v. County of Hennepin*, 801 N.W.2d 395, 398 (Minn. 2011). Factual findings by the tax court will be sustained if "reasonably supported by the evidence as a whole," *id.*, and will be overturned only if there is a "firm conviction that a mistake has been made." *Montgomery Ward v. County of Hennepin*, 482 N.W.2d 785, 788 (Minn. 1992).

Article X, Section 1, of the Minnesota Constitution provides, in part: "[P]ublic burying grounds, public school houses, public hospitals, academies, colleges, universities, all seminaries of learning, all churches, church property, houses of worship, *institutions of purely public charity*, and public property used exclusively for any public purpose, shall be exempt from taxation . . . ." Minn. Const. art. X, § 1 (emphasis added). "The legislature by law may define or limit the property exempt under this section . . . ." *Id.* Under this authority, the Legislature enacted a law now codified at Minn. Stat. § 272.02, subd. 7 (2022) (subdivision 7), to define an "institution[] of purely public charity" (IPPC). To qualify as an IPPC under subdivision 7, an institution must both be exempt from taxation under section 501(c)(3) of the Internal Revenue Code and meet some combination of six enumerated factors[2] designed to show that the organization has a charitable purpose. *Id.*, subd. 7(a).

Subdivision 7 does not set forth any requirements for use of the real property of an IPPC to qualify for tax-exempt status. We have interpreted the use of the word "institution"

---

[2]     These factors are commonly called the "*North Star*" factors, after the decision that first enunciated them before the Legislature subsequently codified them in the statute. *See N. Star Rsch. Inst. v. County of Hennepin*, 236 N.W.2d 754, 757 (Minn. 1975).

4

in our state constitution to include only such property that is owned by the institution and used "directly for the promotion and accomplishment" of its charitable purpose. *In re Nelson's Addition to Minneapolis*, 8 N.W. 595, 596 (Minn. 1881) (also cited as *County of Hennepin v. Brotherhood of the Church of Gethsemane*, 27 Minn. 460, 463 (1881)). Thus, under the constitution, "the taxpayer seeking a property tax exemption must prove: (1) that it is an IPPC and (2) that its use of the property is in furtherance of the tax-exempt charitable purpose of the organization." *Living Word Bible Camp v. County of Itasca*, 829 N.W.2d 404, 409 (Minn. 2013) (citing *Christian Bus. Men's Comm. v. State*, 38 N.W.2d 803, 808 (Minn. 1949)). There is no dispute that Alliance meets the first requirement and is an IPPC under subdivision 7. We thus focus our attention upon the second requirement, that Alliance's use of its property is in furtherance of the tax-exempt charitable purpose of the organization.

We have typically treated the determination of whether property is used for a tax-exempt purpose as a finding of fact. *See, e.g.*, *Christian Bus. Men's Comm.*, 38 N.W.2d at 809 ("Whether the use to which the property has been devoted justifies tax exemption is a question of fact."); *State v. Willmar Hosp.*, 2 N.W.2d 564, 566 (Minn. 1942) ("In this particular case, such ownership and use [as to the issue of tax exemption] are fact questions."). But insofar as the finding of "use" requires us to interpret our state constitution, we address such legal questions first, under a de novo standard of review, and then proceed to evaluate whether the factual finding of the tax court was clearly erroneous under a correct reading of the law. *Cont'l Retail*, 801 N.W.2d at 398.

5

Our case law supports the proposition that an IPPC dedicated to providing low-income housing may "use" its property to further its charitable purpose when it leases the property to people who meet its income qualifications. When considering how property is used, we look more to the nature of the use rather than the identity of the user. For example, in *Christian Business Men's Committee*, we refused to extend tax exemption to the ground floor of a building owned by an IPPC but leased by commercial tenants "who have been in business for themselves." 38 N.W.2d at 809. Because the collection of rent from the for-profit tenants only indirectly furthered the charitable purpose of the IPPC, specifically "unit[ing] Christian laymen for the winning of souls to Jesus Christ," we held that the "direct and immediate" use of the property did not advance the charitable purpose. *Id.* at 807, 809. By contrast, in *Worthington Dormitory, Inc. v. Commissioner of Revenue*, we concluded that an IPPC dedicated to "operating and maintaining a housing facility for rental to students attending Worthington Community College" was tax-exempt when it leased its property to such students for personal residence. 292 N.W.2d 276, 278, 282 (Minn. 1980).[3]

The County contends that, in every case where we have considered use and found a property tax-exempt, the IPPC has used the property for residence "plus" some other use.

---

[3]     The County correctly observes that *Worthington Dormitory* did not explicitly analyze whether the IPPC "used" its properties in furtherance of its charitable purpose. But for us to have found the properties owned by the IPPC tax-exempt, the properties *must* have been used for a tax-exempt purpose. Without asking us to overturn *Worthington Dormitory* as wrongly decided, the County cannot deny that this case represents an instance where property used solely for the housing of an IPPC's beneficiaries satisfied the constitutional requirements for tax exemption.

*See, e.g.*, *State v. Carleton Coll.*, 191 N.W.2d 400, 403 (Minn. 1923) (residence of students and faculty deemed "reasonably necessary" for educational purposes); *State v. Church of Incarnation*, 196 N.W. 802, 804 (Minn. 1924) (residence of a pastor connected with a teaching role in the parochial school); *In re Bd. of Foreign Missions of Augustana Synod*, 22 N.W.2d 642, 646 (Minn. 1946) (residence of a staff member incidental to coordination of missionary activities). This "plus" factor makes sense, given that the use of real estate as a personal residence is likely to be incidental or unrelated to the core purpose of most charities. But we have never held that residence "plus" some other use is necessary for tax exemption. Indeed, in Alliance's case, the charitable purpose *itself* is to provide personal residences for qualifying low-income individuals. We thus conclude that, when the very purpose of an IPPC is to own and operate real property in a charitable manner for private residence, the exclusive residential occupancy of the property by the clients of the IPPC does not defeat the constitutional requirement that property be used to further a charitable purpose.

Having answered the legal question, we now must determine whether the factual finding of the tax court—that Alliance used its properties in furtherance of its charitable purpose—is "reasonably supported by the evidence as a whole." *Cont'l Retail*, 801 N.W.2d at 398. The parties agree that Alliance's purpose is "to create, own, and operate affordable housing for low and very low-income people" and that it organizes itself exclusively for charitable purposes. They further agree that Alliance's tenants qualify as low-income and rent the properties at below market rates. Given these facts, the tax court

7

did not clearly err in finding that Alliance's properties are used for the tax-exempt purpose of providing affordable housing to low-income tenants.

Because the tax court did not err in its legal conclusions or clearly err in its factual findings, we affirm its order granting property tax exemptions to Alliance's properties.

Lastly, we observe that the County raises a concern that, should Alliance's properties be exempt from tax under the Minnesota Constitution and subdivision 7, Alliance's *tenants* could be liable for personal property taxes under a different statute. Minnesota Statutes section 273.19, subdivision 1 (2022), states that "tax-exempt property held under a lease for a term of at least one year . . . shall be considered, for all purposes of taxation, as the property of the person holding it." The County argues that because the tenants of Alliance are "nonexempt person[s]" subject to this statute, *id.*, subd. 1a (2022), the Minneapolis City Assessor could tax the low-income tenants directly as if they were the owners of their rented units.[4]

The question of whether the tenants of Alliance are liable for property taxes is not before us. The County's public policy arguments regarding the Minnesota property tax framework are best addressed by the Legislature because "it is the Legislature's prerogative to reexamine the . . . statute[s]" and make appropriate adjustments. *State v. Khalil*, 956 N.W.2d 627, 642 (Minn. 2021) (first alteration in original) (citation omitted) (internal quotation marks omitted).

---

[4]    At oral argument, the County conceded that personal property taxes have never been assessed against the tenants who previously resided in the tax-exempt properties owned by Alliance.

8

## CONCLUSION

For the foregoing reasons, we affirm the decision of the tax court.

Affirmed.