STATE v. WILLIAM RITSCHEL AND OTHERS.
OAK HILL CEMETERY ASSOCIATION, APPELLANT.[1]

November 9, 1945.

No. 33,964.

[1]Reported in 20 N. W. (2d) 673.

*Edward A. Chalgren, C. A. Youngquist,* and *Albert P. Reed,* for appellant.

*Michael J. Dillon,* County Attorney, *Edward J. Shannon,* Special Assistant County Attorney, and *William S. Ervin,* for the State.

PETERSON, JUSTICE.

The state brings this proceeding to register title to certain land which it claims was forfeited to it for delinquent real estate taxes for the year 1926 pursuant to Minn. St. 1941, §§ 281.16 to 281.27 (Mason St. 1940 Supp. §§ 2164-5 to 2164-16). The answering defendants, invoking the rule that the assessment of exempt property is a nullity which may be asserted at any time (see, 6 Dunnell, Dig. & Supp. § 9154), allege that the state's title is void upon the ground

that the land in question was exempt from taxation under Minn. Const. art. 9, § 1, and Minn. St. 1941, § 272.02(1), (Mason St. 1927, § 1975[1]), as a public burying ground and under § 306.14 (§ 7568), as land and property of a cemetery association.

In 1923, defendant Oak Hill Cemetery Association was incorporated under G. S. 1913, §§ 6268 to 6315, which, with some amendments not here material, now are Minn. St. 1941, §§ 306.01 to 306.87 (Mason St. 1927, §§ 7557 to 7624-1, and 1940 and 1944 Supps.). In January 1924, the association acquired title in fee to the land in question, which was and still is essentially agricultural in nature, but situated within the corporate limits of the city of Minneapolis. In March 1924, the association filed for record with the register of deeds a plat of the lands. About one-sixth of the land was laid out as burial lots. The remainder appeared as vacant or unused land. The plat recites that the association had caused all the land to be surveyed and platted as "Oak Hill Cemetery, Minneapolis, Minnesota," to be occupied exclusively for the burial of the dead and for purposes necessary and proper thereto, and that it dedicated the land forever for the purposes mentioned.

There has never been a body buried in the land thus platted and dedicated as a cemetery, because such burial was prohibited by city ordinances. At the time the corporation acquired the land, a city ordinance was in force prohibiting the establishment of any new cemetery without a permit granted by the department of health. An application for the removal of a body from another cemetery for interment in Oak Hill Cemetery having been made by an undertaker and denied by the department of health, a *mandamus* proceeding was commenced to compel the granting of the permit. Pending the proceeding, an ordinance was adopted in 1924 prohibiting the establishment of any new cemetery or the enlargement of an existing one without the consent of the city council and providing that no permit for the interment of a body should be issued except in existing cemeteries or those established pursuant to the ordinance. This ordinance was sustained as a valid police regula-

tion in State ex rel. Oak Hill Cemetery Assn. v. Harrington, 167 Minn. 410, 209 N. W. 6, where the history of the ordinances and the provisions thereof are set forth. Another ordinance, not referred to in the case cited, commonly known as the zoning ordinance of the city of Minneapolis, was adopted in April 1924 (Minneapolis City Charter, Ordinances, etc., 1872-1925, pp. 527 to 561), restricting the use of the land in question so that a part thereof could be used for commercial purposes and part for residential purposes as defined in the ordinance. A cemetery is not comprehended within either of such permitted uses. Use as a cemetery is classified as a nonconforming one, for which a permit may be obtained from the city council by a vote of three-fifths of all its members and after a hearing pursuant to notice.

Defendants claim that some burial lots were sold, but the record fails to sustain their claim. Apparently arrangements had been made between either the incorporators or the corporation on the one hand and some friends and relatives of the incorporators on the other for the sale of some cemetery lots, but there is no evidence to show what the arrangements were, except that the purchase price had been paid; that any deeds conveying the lots were ever executed and delivered; or any other details of the arrangements, including those relating to the identity of the lots. So far as the record is concerned, the lots in question still belong to the corporation.

From 1923 to the time of trial in June 1943, the land was used by the incorporators. They occupied a house on the land as their home and used part of the land for truck gardening and part for pasturage. They asserted that these uses were for the benefit of the corporation and for the maintenance and protection of the land as a cemetery.

The state contends that, because the land had not been used for burial purposes, it was not a public burying ground within the meaning of the provisions of the constitution and statute exempting such grounds from taxation. Defendants contend that such use is not necessary, because of the ownership of the land by a

cemetery association; that, regardless of such use, the land was exempt from taxation under the statute relating to the incorporation of cemetery associations which provides that the lands and property of any such association shall be exempt from public taxation; and that, if such use were required in any of the respects mentioned, there was such use in the instant case.

The trial court held the land not to be exempt from taxation and ordered judgment registering the state's title. The only question presented by this appeal is whether the land is exempt from taxation.

■ Use of property for burial of the dead is essential to constitute it a burying ground within the meaning of the constitutional and statutory provisions (Const. art. 9, § 1, and Minn. St. 1941, § 272.02[1], [Mason St. 1927, § 1975 (1)]), exempting public burying grounds from taxation. Only by such use can property acquire the character of a burying ground. The exemption therefore depends, as we said in State v. Crystal Lake Cemetery Assn. 155 Minn. 187, 193 N. W. 170, upon whether the property is in fact a public burying ground. Where exemption from taxation depends upon use, the right to the exemption depends upon concurrence of ownership and use for the purpose which gives the property its character as one of the kind entitled to exemption. Property owned by a public hospital, a purely public charity, a college, and other institutions enumerated in the constitutional and statutory provisions mentioned is exempt from taxation only if, in addition to such ownership, the property is in fact used as a public hospital, a purely public charity, a college, or for whatever purpose the institution was formed. Village of Hibbing v. Commr. of Taxation, 217 Minn. 528, 14 N. W. (2d) 923, 156 A. L. R. 1294; State v. Willmar Hospital, Inc. 212 Minn. 38, 2 N. W. (2d) 564; Ramsey County v. Macalester College, 51 Minn. 437, 53 N. W. 704, 18 L. R. A. 278. Here, the land in question is not exempt under the constitutional or the statutory provisions mentioned, because it was not in fact used for the burial of the dead.

■ Whether the land in question is exempt as land of a cemetery association under Minn. St. 1941, § 306.14 (Mason St. 1927, § 7568), depends on whether the exemption in question is granted to cemetery associations solely because of the fact that they are institutions organized in the particular manner provided by the statute of which § 306.14 (§ 7568) is a part, or because of the fact that they devote their property to use which the statute recognizes as the basis for the exemption. The answer to the question depends upon the meaning of the language of the statute. In this as in other cases, the legislative intent is to be sought. So far as here material, §§ 306.01 to 306.87 (§§ 7557 to 7624-1, and 1940 and 1944 Supps.), provide for the incorporation of cemetery associations, their powers, and their management and control. No period for their duration is fixed; their existence is perpetual. The purpose of such an association is declared to be the "procuring and holding or selling lands or lots exclusively for the purpose of a public cemetery." § 306.02 (§ 7558). Power is granted by the same section to every such corporation to "acquire and manage all real and personal property necessary or proper for the establishment, embellishment, care, and management of a cemetery," and to "construct and operate thereon a crematory and other proper means of disposing of the dead," and by § 306.05 (§ 7561) to "take and hold, * * * not exceeding 300 acres of land to be *actually* used and occupied exclusively for the burial or cremation of the dead and for purposes necessary or proper thereto." (Italics supplied.) Exemption from taxation is granted by § 306.14 (§ 7568), which provides:

"The lands and property of any such cemetery association shall be exempt from all public taxes and assessments, * * *."

In determining the legislative intent, the purpose of such legislation should be kept in mind. The basis of tax exemptions is the accomplishment of public purposes and not the favoring of particular persons or corporations at the expense of taxpayers generally. For that reason, absent other tokens of legislative intention, a statute providing that the property of a corporation shall be

584

exempt from taxation should be construed as applying only to the property used for the purpose or object for which it was created. The exemption does not apply to property not so used. Bank of Commerce v. Tennessee, 104 U. S. 493, 26 L. ed. 810; Bd. of Directors of Chicago Theological Seminary v. People ex rel. Raymond, 189 Ill. 439, 59 N. E. 977, affirmed, 188 U. S. 662, 23 S. Ct. 386, 47 L. ed. 641; People ex rel. Huck v. Graceland Cemetery Co. 86 Ill. 336, 29 Am. R. 32; St. James Educational Inst. v. City of Salem, 153 Mass. 185, 26 N. E. 636, 10 L. R. A. 573; People ex rel. Nelson v. Rockford Masonic Temple Bldg. Assn. 348 Ill. 567, 181 N. E. 428, 83 A. L. R. 768; St. Louis Y. M. C. A. v. Gehner, 329 Mo. 1007, 47 S. W. (2d) 776, 81 A. L. R. 1449; 2 Cooley, Taxation (4 ed.) § 680; 51 Am. Jur., Taxation, § 539, note 11. As said in Ford v. Delta & Pine Land Co. 164 U. S. 662, 667, 17 S. Ct. 230, 232, 41 L. ed. 590, 592:

"It has been frequently decided that a general exemption of the property of a corporation from taxation is to be construed as referring only to the property held for the transaction of the business of the company."

In County of Ramsey v. C. M. & St. P. Ry. Co. 33 Minn. 537, 24 N. W. 313, which involved the exemption of railroad property from general taxation because of the fact that the railroad paid a gross earnings tax in lieu of all others, we recognized this principle of construction, and the case is cited as being authority for that proposition. (See, Ford v. Delta & Pine Land Co. supra; Ramsey County v. Macalester College, 51 Minn. 437, 53 N. W. 704, 18 L. R. A. 278.) We there said that the "statutory exemption" from general taxation extended only to property held and used by the corporation for the purposes for which it was created and consequently was confined to property used only for railroad purposes.

It has been said that cemeteries are granted exemption from taxation in order to give effect to the almost universal sentiment of mankind that a burial place is not only a sacred and hallowed one, but also truly a final one, to be perpetually protected against desecration. Cypress Lawn Cemetery Assn. v. City and County of

San Francisco, 211 Cal. 387, 295 P. 813. It might also be observed that providing for the burial of the dead is a public function often imposed in the exercise of legislative power upon local governmental authorities. Brown v. Maplewood Cemetery Assn. 85 Minn. 498, 89 N. W. 872. The purpose of granting exemption from taxation to cemeteries is the attainment of these purposes. These can be accomplished only by actual, present use of the property for burial purposes. Mere ownership or holding of property without such use does not accomplish the objects which it is the purpose to accomplish by granting the tax exemption. In the light of these principles, it seems reasonably clear that, when the statutory provisions authorizing the incorporation of cemetery associations for the purpose of procuring and holding or selling lands or lots *exclusively* for the purpose of public cemeteries, authorizing them to take and hold land *to be actually used and occupied for the burial or cremation of the dead,* and granting to such associations exemption from taxation of their land and property are construed together, as they should be, since the latter refers to the others, the legislative intention was to limit the exemption from taxation to land actually used for burial purposes.

The case of People ex rel. Oak Hill Cemetery Assn. v. Pratt, 129 N. Y. 68, 29 N. E. 7, is cited *contra* and at first blush seems fully to sustain the claim that it is directly contrary to our holding. That case arose under L. New York 1847, c. 133, 'of which our statute in its original form, R. S. 1851, c. 37, except for some unimportant verbal changes, was a copy. The New York statute provided in § 1 that associations may be incorporated for the same purposes mentioned in our statute; in § 4, that any such association may acquire not to exceed 200 acres of land "to be held and occupied exclusively for a cemetery for the burial of the dead"; and, in § 10, that the "cemetery lands and property" of any such association shall be exempt from taxation. The cemetery association there involved was incorporated under the statute mentioned and acquired land pursuant to its provisions. After such acquisition, as here, a city ordinance was passed prohibiting the

use of the land for burial purposes. The New York court took the view that all land and property of the cemetery association from the moment of its acquisition was held for the burial of the dead. Nothing was said in this connection concerning the necessity of occupying the land for burial purposes, which was a clear requirement of the statute. Further, it was held that the land of a cemetery association must be held by it for burial purposes as long as it continues to exist notwithstanding the ordinance prohibiting such use. The court said (129 N. Y. 74, 29 N. E. 8):

"* * * So long as Oak Hill cemetery exists as a corporation, it must hold its property exclusively for cemetery purposes, and while burials cannot now be made therein, the ordinance prohibiting them may be repealed or modified at any time so as to allow them. There is no provision in the statute that its land shall be exempt from taxation only so long as burials are authorized to be made therein. The exemption is absolute."

In construing our statute, we are not bound by the decision of the New York court construing the statute of that state, because that decision was rendered after we adopted our statute. We refuse to follow the cited case notwithstanding the high standing of the court rendering it and our deep deference to its decisions. We deem the decision unsound, because, *first,* it leaves out of view the necessity of use of the land for cemetery purposes, which the words "and occupied" following the word "held" seem to require. The decision in effect holds that land of a cemetery association is exempt from taxation if "held," even though it is not "occupied," for cemetery purposes. Thus, effect was given to one requirement of the statute and denied to another. We think that we should give effect to every part of our statute. *Second,* the decision fails to consider the objects and purposes of ever granting such an exemption. If these had been considered, it is hard to see how the result mentioned could have been reached. *Third,* the result reached was unsatisfactory, because of the fact that the court suggested that the tax exemption might be terminated by proceedings to dissolve the corporation for nonuser of the property for burial purposes.

It seems better to us to hold that the exemption never came into existence at all because of the nonuser. *Fourth,* our statute is not now in all respects the same as the New York one, and the history of those changes reflects a legislative intention to preclude here the result reached in New York.

The decision in the New York case was rendered in 1891. In 1901, when our legislature amended our statute, it apparently took notice of the decision in the Pratt case. Prior to 1901, the corresponding provisions of our statute were identical with those of New York. In 1901, G. S. 1894, § 3096 (which, as amended, now is § 306.05 [§ 7561]), was amended by inserting the words "actually used" after the word "held" and before the words "and occupied exclusively for a cemetery for the burial of the dead," etc. L. 1901, c. 220. The plain inference is that the words "actually used" were inserted in 1901 to make plain that use in fact for burial purposes was essential to exemption. Of course, in a philosophical sense, the word actually added nothing; a thing is actually used and occupied or it is not used and occupied at all. But the word was used with some meaning, and that meaning, if it can be discovered, must be given to it. This we think can be done. "Actually" is often used with other words as opposed to "constructive" and means "an actual or existing fact," "really," "in fact," and the like. 2 Wd. & Phr. (Perm. ed.) pp. 257-258. Where a statute granting exemption from taxation of property used for certain purposes is amended by providing that the exemption shall apply to property "actually used" for those purposes, the insertion of the word "actually" before the word "used" evinces an intention that the use must be actual and present, and thus serves to remove all doubt as to whether the exemption applies to future as well as to present use. Institute of Holy Angels v. Borough of Fort Lee, 80 N. J. L. 545, 77 A. 1035. So it is here. The legislature in effect said that a cemetery association may hold land and property only for actual and present burial use, and that, if it is so used and occupied, it shall be exempt from taxation.

This construction of the change effected by the 1901 statute is confirmed by the changes wrought in the 1905 Revision. There, the word "held" before the words "actually used and occupied" in the 1901 statute and the word "cemetery" before the words "lands and property" in G. S. 1894, § 3107 (which as amended now is § 306.14 [§ 7568]), were dropped. R. L. 1905, §§ 2939 and 2946. While the word "held" generally means "owned," it does not ordinarily mean any particular user. For example, in Wey v. Salt Lake City, 35 Utah 504, 101 P. 381, the word "held" in a statute exempting all property held by a board of education was construed to mean all property owned by the board even though not used for school purposes. We cite this case not because we agree with it, but because it illustrates that the use of the word "held" affords a basis for contending that mere ownership without any particular use was intended. The elimination of the word "held" under the circumstances removed any basis for asserting that mere ownership without user for burial purposes was a ground for exemption. The word "cemetery" before the words "lands and property" was dropped not because it was intended thereby to make all lands of cemetery associations exempt from taxation, regardless of their use, but because, in view of the other changes mentioned, the word failed to serve any purpose. By inserting the words "actually used" after the word "held" and before the words "and occupied," etc., in the 1901 statute (now § 306.05 [§ 7561]) and eliminating the word "held" in the 1905 Revision, cemetery associations were permitted to hold only lands used for actual burial purposes. Since § 306.14 (§ 7568) exempts from taxation only lands and property. so held, the word "cemetery" therein before the words "lands and property" added nothing to a meaning already made clear, and, under the circumstances, had become tautological. In eliminating the word "cemetery" under the circumstances, the revisers but performed their function of ridding the statutes of redundancies and unnecessary verbiage. Land owned by a cemetery association incorporated under §§ 306.01 to 306.87 (Mason St. 1927, §§ 7557 to 7624-1, and 1940 and 1944 Supps.), is not exempt under § 306.14

(§ 7568) as land of a cemetery association unless actually and presently used for burial purposes.

■ Intention to use land for burial purpose at some future time, which of necessity here could be only when and if the city council of Minneapolis should give its consent thereto or amend or repeal the ordinances in question, is not sufficient to satisfy the requirement of an actual and present use for such purpose. Ramsey County v. Macalester College, 51 Minn. 437, 53 N. W. 704, 18 L. R. A. 278, *supra;* 2 Cooley, Taxation (4 ed.) § 687; 51 Am. Jur., Taxation, § 545; 61 C. J., Taxation, § 400, note 60. The case of State v. Lakewood Cemetery Assn. 93 Minn. 191, 101 N. W. 161, is not *contra.* We there held that land acquired by a cemetery association to enlarge a cemetery already devoted to the burial of the dead and for use in the near future for such purposes as part of the cemetery is exempt from taxation. Of course, the exemption is not confined to mere graves—land already occupied by corpses. As a practical matter, a cemetery association must have on hand for sale to the public lots laid out for burial purposes, but not actually occupied as graves. The word *cemetery* comprehends a place where burials have been made and will continue to be made in the future. Owning and holding land for such future needs, if reasonable in amount and not beyond reasonable anticipation, are incidental to operating a cemetery. The difference between such a case and the instant one is that in the former the land is devoted to burial purposes both past and anticipated in the near future, whereas in the latter there is no such use at all. In the instant case, such use could not be reasonably anticipated, because of legal obstacles to the accomplishment of any such use. It makes no difference why there is no present use. Where there is no present use because of the fact that the owner lacks financial ability for the purpose, but intends a future use when such ability is acquired, the property is nonetheless not exempt from taxation. Annotation, 2 A. L. R. 54, *et seq.,* where many cases are collected. Here, the inability is caused by legal obstacles interposed by city ordinances. The city ordinances, while not laws in every meaning

of the term, within their scope have the force and effect of law. In effect, they are, as they are sometimes called, local laws. Mayes v. Byers, 214 Minn. 54, 7 N. W. (2d) 403, 144 A. L. R. 821. A legal obstacle, for present purposes, is no different from a financial one. While the case of People ex rel. Oak Hill Cemetery Assn. v. Pratt, 129 N. Y. 68, 29 N. E. 7, *supra,* seems to give some support to a contrary view, we do not deem it necessary, in view of what we have already said concerning that case, to distinguish it further.

Nor does the instant case come within the rule of cases like Village of Hibbing v. Commr. of Taxation, 217 Minn. 528, 14 N. W. (2d) 923, 156 A. L. R. 1294, and State v. Second Church of Christ, Scientist, 185 Minn. 242, 240 N. W. 532, holding that, where a corporation or other institution entitled to hold its property exempt from taxation acquires property with the intention of devoting it to the use upon which the exemption rests, the right of exemption carries with it, as an incident, an opportunity to adapt and fit the property for such use within a reasonable time in execution of plans or arrangements for the purpose. Here, any plans to adapt the land in question for burial purposes could not be executed, because prohibited by the ordinances mentioned. The lands in question could not be used for burial purposes at all, much less within a reasonable time.

The use made of the land was not such a use as to constitute it a public burying ground. Aside from the incorporation of the association, and the acquisition, platting, and dedication of the land for cemetery purposes, no use was made of the land except for agricultural purposes. Hence, this is merely a case of platting and dedication without actual use as a public burying ground. "A mere dedication or appropriation on paper is not enough." Woodlawn Cemetery v. Inhabitants of Everett, 118 Mass. 354, 361. The land was being held until it could be used for cemetery purposes. Merely holding land for use as a public burying ground does not constitute such use. Fairview Heights Cemetery Co. v. Fay, 90

N. J. L. 427, 101 A. 405 (affirmed, 91 N. J. L. 687, 106 A. 891). See, Annotation, 122 A. L. R. pp. 902, 903.

Our conclusion is that the land in question is not exempt from taxation and that the decision below was correct.

Affirmed.

