Application of GRAND VIEW PARK CEMETERY ASSOCIATION TO REGISTER TITLE TO CERTAIN LAND, Respondent-Appellant,

v.

CITY OF EDINA, Appellant-Respondent.

Nos. 46929, 46976 and 47207.

Supreme Court of Minnesota.

July 29, 1977.

Mackall, Crounse & Moore and Frank A. Dvorak, Minneapolis, for applicant.

Dorsey, Windhorst, Hannaford, Whitney & Halladay and David A. Ranheim, Minneapolis, for City of Edina.

Heard before ROGOSHESKE, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an action to register title to certain land located in the city of Edina. The action was commenced by Grand View Park Cemetery Association (Grand View). The only interested party interposing an answer and contesting title is the city of Edina.

In 1964 the Edina assessor decided to place several formerly tax-exempt parcels owned by Grand View on the tax rolls. Rather than contest the decision by the assessor, Grand View took no action. The taxes were not paid; the taxed property was forfeited to the state of Minnesota and was then conveyed to the city of Edina in 1973. Grand View brought the present action in district court to regain title to the forfeited property.

Below is a diagram of Grand View with parcel locations:

The district court found that taxes had been improperly assessed upon parcels 1200, 1400, and 3200, though in each case the court found that the assessor had acted "in good faith and with some justification." Edina contests the total exemption of these parcels from taxation. As to parcel 3600, however, the court found taxation appropriate. Grand View contests this finding on both factual and legal grounds.

The factual findings of the district court were thorough and necessarily lengthy, and hence will not be reviewed in detail. Those facts important to the resolution of this appeal will be discussed below. The issues presented are as follows:

(1) Did the district court apply a suitable legal standard in determining the tax status of the parcels at issue?

(2) Was the district court clearly erroneous in concluding that parcels 1200, 1400, and 3200 are tax exempt?

(3) Was the district court clearly erroneous in concluding that parcel 3600 is not tax exempt?

1. The district court looked to both Minn.Const. art. 10, § 1, and Minn.St. 306.-14, subd. 1, as generally providing tax-exempt status to cemetery property. Minn. Const. art. 10, § 1, reads:

"The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes, but public burying grounds, public school houses, public hospitals, academies, colleges, universities, all seminaries of learning, all churches, church property, houses of worship, institutions of purely public charity, and public property used exclusively for any public purpose, shall be exempt from taxation except as provided

in this section. There may be exempted from taxation personal property not exceeding in value $200 for each household, individual or head of a family, and household goods and farm machinery as the legislature determines. The legislature may authorize municipal corporations to levy and collect assessments for local improvements upon property benefited thereby without regard to cash valuation. The legislature by law may define or limit the property exempt under this section other than churches, houses of worship, and property solely used for educational purposes by academies, colleges, universities and seminaries of learning."

Minn.St. 306.14, subd. 1, provides:

"The lands and property of any such cemetery association shall be exempt from all public taxes and assessments, and shall not be sold on execution against such association or any lot owner. The owners of cemetery lots, their heirs or legal representatives, may hold the same so exempt so long as they remain appropriated to the use of a cemetery; and no road or street shall be laid through such cemetery, or any part of the lands of such association, without the consent of the trustees."

The constitutional provision is reiterated by Minn.St. 272.02, subd. 1, which provides in part:

"Except as provided in other subdivisions of this section or in section 272.025, all property described in this section to the extent herein limited shall be exempt from taxation:

(1) All public burying grounds."

Tax exemption under art. 10 and § 272.02 therefore requires that the property constitute "public burying grounds," while under § 306.14 the property must be "cemetery lots * * * appropriated to the use of a cemetery."

■ In its memorandum decision, the trial court noted its reliance upon an opinion by another district court judge:

" * * * In regard to parcel 3600, there was a failure to meet the three elements which must be present, in addition to intent to use the parcel for cemetery use. The three elements were set down in a well reasoned memorandum by the Honorable Dana Nicholson in the Matter of the Petition of Sunset Memorial Park Association, Inc., District Court File No. 654111, and are as follows: 1) That Grandview has the financial ability to develop parcel 3600 for cemetery purposes; 2) That Grandview continuously proceeded to develop parcel 3600 for a cemetery and that there was no abandonment of this continuous progress; and 3) That Grandview intended to develop parcel 3600 for cemetery purposes within a reasonably definite future period."

Edina approves of the court's utilization of these criteria, while Grand View asserts they are "founded neither in our Constitution, statutes, nor case law." The *Sunset Memorial Park* decision relied on by the trial court was affirmed by this court per curiam. *In re Petitions of Sunset Memorial Park Assn.*, Minn., 240 N.W.2d 821 (1976).

This court analyzed extensively the tax-exempt status of cemetery lands in *State v. Ritschel*, 220 Minn. 578, 20 N.W.2d 673 (1945). The court construed the constitutional provision and the statutes involved in the present case, and arrived at the following legal conclusion: Land owned by a cemetery association is not exempt from taxation under Minn.Const. art. 10, § 1,[1] and Minn.St. 272.02, subd. 1, as a public burying ground, or under Minn.St. 306.14, subd. 1, as land of a cemetery association, unless the land is actually and presently used for the burial of the dead. An intention on the part of a cemetery association to use its land in the future for the burial of the dead was held not to afford any basis for exemption of the land from taxation under the above-mentioned constitutional and statutory provisions.

The key facts of *Ritschel* were as follows: The cemetery association purchased land in Minneapolis in 1924. About ⅛ of the dedicated land was platted for burial lots; the

---

1. The applicable constitutional provision was revised and renumbered in 1974.

remainder was not. From 1924 to the time of trial in 1943, ·the land was used by the incorporator of the cemetery for a home, truck gardening, and pasturage. The court, on these facts, held that the land was not tax exempt because it was not in fact used for burial of the dead. The court concluded:

"The use made of the land was not such a use as to constitute it a public burying ground. Aside from the incorporation of the association, and the acquisition, platting, and dedication of the land for cemetery purposes, no use was made of the land except for agricultural purposes. Hence, this is merely a case of platting and dedication without actual use as a public burying ground. 'A mere dedication or appropriation on paper is not enough.' *Woodlawn Cemetery v. Inhabitants of Everett,* 118 Mass. 354, 361. The land was being held until it could be used for cemetery purposes. Merely holding land for use as a public burying ground does not constitute such use." 220 Minn. 590, 20 N.W.2d 679.

Several other cases offer guidance in this area. In *State v. Crystal Lake Cemetery,* 155 Minn. 187, 189, 193 N.W. 170, 171 (1923), the trial court had found that the cemetery land at issue "was used exclusively as a public cemetery, and no more was included therein than was reasonably necessary to anticipate the growing need." This court affirmed this aspect of the trial court's decision, stating:

"The Constitution exempts 'public burying grounds' from taxation * * *. This exemption is not made to depend upon the character of the owner, but upon whether the property is in fact public burying grounds. There is no question but that this property is held as, devoted to, and dedicated for a public burying ground, insofar as lots have been sold to the public and bodies interred therein. And we think the finding that the whole tract is of this character, since it embraces only such area as may be reasonably anticipated to be required to supply the needs of the near future. The learned trial court was therefore right in

holding void the general taxes assessed." 155 Minn. 189, 193 N.W. 171.

In ·the early case of *State v. Lakewood Cemetery Association,* 93 Minn. 191, 101 N.W. 161 (1904), the cemetery association had acquired land to be used for sale of new gravesites in the near future. The court held the addition to be exempt from taxation, in that it would provide for the "future needs of the public" but not at an "indefinite future time." 93 Minn. 193, 194, 101 N.W. 161, 162. The court summarized: "We merely hold that it is within the power of the cemetery association to acquire property reasonably necessary for use *presently* for cemetery purposes, and that such lands are exempt from taxation." 93 Minn. 194, 101 N.W. 163 (emphasis added). In *Ritschel,* the court synthesized the two cases as follows:

" * * * The case of *State v. Lakewood Cemetery Assn.,* 93 Minn. 191, 101 N.W. 161, is not *contra.* We there held that land acquired by a cemetery association to enlarge a cemetery already devoted to the burial of the dead and for use in the near future for such purposes as part of the cemetery is exempt from taxation. Of course, the exemption is not confined to mere graves—land already occupied by corpses. As a practical matter, a cemetery association must have on hand for sale to the public lots laid out for burial purposes, but not actually occupied as graves. The word *cemetery* comprehends a place where burials have been made and will continue to be made in the future. Owning and holding land for such future needs, if reasonable in amount and not beyond reasonable anticipation, are incidental to operating a cemetery. The difference between such a case and the instant one is that in the former the land is devoted to burial purposes both past and anticipated in the near future, whereas in the latter there is no such use at all. In the instant case, such use could not be reasonably anticipated, because of legal obstacles to the accomplishment of any such use. It makes no difference why there is no present use. Where

there is no present use because of the fact that the owner lacks financial ability for the purpose, but intends a future use when such ability is acquired, the property is nonetheless not exempt from taxation." 220 Minn. 589, 20 N.W.2d 678.

Additionally, the court in *Brown v. Maplewood Cemetery Association,* 85 Minn. 498, 505, 89 N.W. 872, 875 (1902), noted:

" * * * By section 3, article 9, of the state constitution [now art. 10, § 1], authority is given the legislature to exempt public burying grounds from taxation. This provision of the organic law has been made effective through the enactment by the legislature of appropriate acts to effectuate such exemptions * * *.

*"It is inconceivable that these exemption privileges should be granted for the purpose of aiding schemes for private profit."* (Emphasis added.)

The above cases are supportive of the criteria used by the trial court in the instant case. These cases establish that cemetery land is tax exempt only if it is actually being used for burials, or is in the process of being sold for gravesites, or is being held for sale within a relatively fixed span of time. Further, the land must be suitable for use as a cemetery, and cannot exceed in extent the reasonable expectation of public needs. If cemetery lands were such that the cemetery association itself could not develop them for public use, or were being used for commercial purposes, or were being held for use at some undetermined future time, tax exemption would not be appropriate.

Since it appears that the criteria used by the district court represent a reasonable interpretation of our prior decisions in this area, Grand View's claim that an incorrect legal standard was applied is without merit.

■ 2. Edina contends the trial court should have held that, at a minimum, portions of parcels 1200, 1400, and 3200 were not tax exempt. Although Edina points out factors weighing against the finding of exemption, it does not argue that the court was clearly erroneous in its decision as to these parcels, nor does it argue that an improper legal standard was applied.

The trial court, in addition to the evidence presented at trial, personally viewed the cemetery lands at issue. The court's memorandum decision indicates that he examined each of the three parcels closely and noted many factors as to each weighing in favor or against exemption. The evidence would probably support a finding either way as to parcel 1200. The trial court cited the following as weighing in favor of taxation:

"The 1964 assessment of the East 11 acres of Parcel 1200 was based upon and is supported by a number of factors. The Harry Lindbery[2] residence was and is located on this parcel, and it has served and is serving a number of non-cemetery purposes. It was and is used not only as a private residence for Lindbery and his family, but also as an office and headquarters for various private Lindbery commercial operations which are not cemetery related. This parcel also served in 1964 and still serves as a storage site for various trucks and equipment being used for non-cemetery purposes in connection with Lindbery's other enterprises, including large over-the-road semi-trailer trucks used in the private Lindbery hauling company. The aforementioned earth excavation and removal operation overlapped and still overlaps into the Southeast portion of Parcel 1200, and the portion of this parcel East of the Lindbery residence was in 1964 and still is rough and undeveloped."

In support of tax exemption, the court found:

" * * * However, the Lindbery residence was in 1964 and still is used in part for cemetery office purposes, which though minimal does play a part in the

2. Harry Lindbery has been manager, treasurer, and trustee of Grand View since 1947, and was elected president in 1974.

overall cemetery operation. Also, portions of Parcel 1200, especially the West portion (some included in and some excluded from the Subject Land) showed in 1964 and still show indications of site preparation and landscaping in keeping with proper cemetery development and some actual burials. Although not yet completely developed, viewing the prospective use of Parcel 1200 from the fact of its location as a tie-in between the old Northeast corner of the cemetery and the newer Northwest corner of the cemetery, it is reasonable to conclude that the balance of Parcel 1200 would in the reasonably foreseeable future be ripe for realistic cemetery usage, with the possible exception of the home-office site."

The district court balanced these competing considerations and concluded that exemption was appropriate. To carve parcel 1200 into taxable and nontaxable sections, as advocated by Edina, would be impractical and would likely result in continuous debate or litigation between the city assessor and the cemetery association. The district court was therefore justified in holding the entire parcel exempt, despite the presence of contrary factors.

As to parcel 1400, the trial court found:

"The 1964 tax assessment of this parcel was based upon and is supported by the fact that the area remained basically in its natural state and there were and are no grave sites on this parcel. Also, the aforementioned excavation area overlapped and still overlaps into the South part of this parcel. However, as with the presently undeveloped portion of Parcel 1200, this Parcel 1400 does serve to tie in the entire tract adjacent to Maloney Avenue, the old and the newer parts of the cemetery. It also contains some indications of general site grading and preparation for future cemetery use. The Court finds that it is both feasible and realistic to expect that Parcel 1400 can be used in the reasonably foreseeable future for cemetery purposes."

Edina's basic argument against exemption of this parcel is that it is not necessary for cemetery use in the reasonably foreseeable future. Edina points to the fact that the burial rate in Grand View only slightly exceeds 100 per year, while even the 1964 assessment left 12,500 burial sites available on tax-exempt property. The trial court clearly had in mind, however, the probability that the burial rate will rise in the future as the expanded population of the Edina and Hopkins suburbs ages and the death rate increases. While it is true that mere holding of land for future cemetery use is not sufficient, it is also true that provision must be made for the future needs of the public. It does not appear that the approximately 38,000 burial sites which would be available for future use are excessive in such a populous area. In any event, the trial court was not clearly erroneous in its finding on this issue.

Parcel 3200 had the following characteristics:

"The 1964 tax assessment of this parcel was based in part upon the presence of what had the appearances of being a commercial greenhouse operation (owned by two brothers of Harry Lindbery), and in part upon the large hill and rough terrain in the South portion of the parcel (including some of the excavated area). However, in 1964 Parcel 3200 was the site of 43 burials and through 1973 it has been the site of 103 burials. Other portions of this parcel have been physically prepared to receive future burials. Also, the greenhouse did produce merchandise for use in Grandview cemetery."

Edina again seeks a partition of the parcel to make the southern portion taxable and the northern portion exempt. The trial court gave its view in the memorandum decision:

"Parcel 3200 * * * shows definite signs of cemetery development with Park 'A' in the Northeast corner of the cemetery land being the first parcel quite fully developed for cemetery usage. It is the Court's finding that parcel 3200 has been and is being reasonably developed for cemetery usage and should be entirely tax exempt."

Although Edina is dissatisfied with this holding, it does not provide evidence to show it is clearly erroneous. For reasons noted above, subdivision of the parcel into taxable and nontaxable parts was an option properly declined by the trial court.

As to parcels 1200, 1400, and 3200, then, the trial court must be affirmed. In general, the evidence shows these parcels to be suitable for cemetery development. They form a cemetery of reasonable size and convenient configuration and are presently in use or are under active development for use in the near future. Under the standards enunciated above, the trial court could find tax exemption appropriate, and accordingly, title to these parcels remains in Grand View.

■ 3. The central dispute in this case concerns the tax status of parcel 3600. This parcel being approximately 20.28 acres, constitutes virtually the entire southern half of the cemetery-owned lands. The diagram of the cemetery, *supra*, shows that parcel 3600 is not necessary to the remaining parcels for purposes of accessibility or continuity. The undisputed evidence indicates that parcel 3600 would add some 24,000 more burial sites to the approximately 38,000 provided by the other parcels.

Grand View takes the position that the trial court committed errors of law which led to a wrong decision regarding parcel 3600. Specifically, Grand View argues that the trial court applied incorrect legal standards to determine the taxability of cemetery lands. As discussed above, however, the trial court's memorandum and conclusions of law indicate that it did not commit legal error under the prior decisions of this court. The only remaining inquiry, therefore, is whether as a factual matter the trial court was clearly erroneous in finding that parcel 3600 should be taxed.

The findings of the trial court establish two aspects of parcel 3600 which we find sufficient to support the court's conclusion of taxability: (1) Parcel 3600 is not now being used in any way as either public burying grounds or as land appropriated to the use of a cemetery;[3] and (2) parcel 3600 is not needed for such purposes in the reasonably definite future. As to the first point, the evidence supports the court's finding that parcel 3600 has been used largely for commercial purposes, including excavation and earth removal, and storage of massive pipes, large over-the-road semi-trailer trucks, privately owned dump trucks, and new camper tops. At the time of assessment the parcel showed no signs of actual cemetery development.

Second, the record strongly supports the conclusion that parcel 3600 simply is not needed for burial space in the near future. Burial sites available in the other parcels total approximately 40,500 of which only 2,500 have been used. The rate of burials in 1973 was climbing slowly from just over 100 per year. It therefore is safe to assume that, even given a gradually increasing burial rate, Grand View Cemetery is more than sufficient in size without the additional 24,000 sites which parcel 3600 could provide. This parcel simply does not meet the criteria as needed for future use under our prior cases discussed above.

The record shows that parcel 3600 comes under the holding in State v. *Ritschel, supra,* that a mere intention to use land in the

---

**3.** Finding of Fact 9 by the trial court is crucial to this issue; it reads as follows: "Beginning in approximately 1967, three years after the subject tax assessment, Harry Lindbery decided upon and implemented a program of grading, preparation and layout of grave sites in Park N, located in the far Southeast corner of the Subject Land in Parcel 3600. This is an isolated area of the cemetery, removed both by distance and rough terrain from the other portions of the cemetery. The area is virtually unreachable by a funeral procession, the only access being by a natural grassy swail which lacks even minimal grading or signs that it has ever been traveled. Eleven burials were made in Park N from 1969 through 1973, and further burials there were halted by Order of the Court dated September 30, 1974. It was not and is not necessary to use this area for burials, and such use did not and does not represent a fair and reasonable use of such land. Rather, the Court finds that such use was a ploy to avoid taxation. Ordering the transfer of those eleven grave sites to the established portion of the cemetery will serve the interests of justice and the public interest."

future for burial of the dead affords no basis for exemption of the land from taxation. Further, the record supports the conclusion that parcel 3600 is not necessary for public burial needs in the reasonably definite future. The district court applied a proper legal standard to the parcels at issue, and its conclusions were based on factual findings which are not clearly erroneous. Title to parcel 3600 therefore has properly vested in the city of Edina.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.