**CITY OF NEW HOPE, Appellant,**

v.

**The CATHOLIC CEMETERIES, Respondent.**

**No. C1–90–2096.**

Court of Appeals of Minnesota.

March 19, 1991.

Steven A. Sondrall, Corrick & Sondrall, Robbinsdale, for appellant.

Andrew J. Eisenzimmer, Meier, Kennedy & Quinn, St. Paul, for respondent.

Considered and decided by DAVIES, P.J., and RANDALL and MULALLY, JJ.*

## OPINION

RANDALL, Judge.

Appellant, City of New Hope, challenges summary judgment granting tax exempt status to land owned by respondent, The Catholic Cemeteries, which is held for future use as a cemetery. Appellant argues the subject land was not appropriated to reasonable and definite future use as a cemetery and should therefore be assessed for improvements to the city street which abuts the subject property. We affirm.

## FACTS

Appellant, City of New Hope, made improvements on Boone Avenue, a street adjacent to lands owned by respondent, The Catholic Cemeteries. Respondent's land was an 81 acre parcel held since 1953 for the purpose of operating and maintaining a private Catholic cemetery. Boone Avenue, which was improved by appellant, abutted the west 45 acres of respondent's 81 acre parcel. On August 22, 1988, appellant levied an assessment against the 45 acre parcel for improvements to the adjacent street.

Respondent appealed the assessment to the district court in Hennepin County on September 7, 1988. Respondent asserted an exemption to special assessment as a private cemetery pursuant to Minn.Stat. § 307.09. The substantial and significant facts were undisputed by the parties and each moved for summary judgment.

Gethsemane Cemetery was platted as a cemetery in 1953. The property consists of 81.76 acres. It is bordered on the west by Boone Avenue, on the east by Winnetka Avenue, on the north by 42nd Avenue, and on the south by residential, single family housing.

Gethsemane Cemetery is a private cemetery owned and operated by respondent. The cemetery is exclusively for use as burial sites by members of the Catholic faith. The first burials occurred in 1961. There have been over 6500 burials in the cemetery. All burials have been limited to approximately 33 acres in the easterly portion of the 81 acre parcel. The average available grave sites per acre are 1100. The easterly 33 acres has an additional capacity of 29,800 grave sites. The present day burial rate at Gethsemane Cemetery is 240 burials per year. If that burial rate were to remain unchanged, the easterly 33 acres has the potential capacity to meet needs for approximately another 120 years.

However, Gethsemane Cemetery is just one of six cemeteries operated privately by respondent in the Twin Cities. All but one of the other cemeteries are either presently sold out or close to capacity. Respondent has a present day burial rate for all six of its cemeteries of 1700 burials per year. As older cemeteries become filled, the continued need for Catholic burial plots will begin to be satisfied in larger measure by Gethsemane Cemetery. Therefore, the yearly burial rate of 240 burials per year at Gethsemane Cemetery will increase as the other Catholic cemeteries reach their capacity. Testimony by Howard J. Fox, past executive director for The Catholic Cemeteries, was submitted into the record by appellant, and Mr. Fox felt the forseeable increases in burial rates could require use of the subject 45 acres of Gethsemane Cemetery within as little as 30 years. Both sides agree the increased pressure and use cannot be precisely calculated.

The 45 acres which were assessed by appellant for the improvements to Boone Avenue are undeveloped. There have been no burials on these acres, there is no internal road system, and there have been no improvements, grading or landscaping. However, the 45 acres were platted in 1953 as cemetery land, and since burials began at Gethsemane Cemetery, the 45 acres

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6, § 2.

have not been used for any purpose inconsistent with that 1953 designation. Appellant does not dispute that respondent intends to use the 45 acres of Gethsemane Cemetery as burial sites; that the Diocese's intention is that the land will never be used for any inconsistent purpose; and that no inconsistent use of the undeveloped land in question has ever been made by respondent.

A hearing on opposing motions was held on May 18, 1990. On July 11, the district court granted respondent's motion for summary judgment. It found the 45 acres in question was, as a matter of law, exempt from special assessment in that the land was appropriated to use as a cemetery.

## ISSUE

Was the west 45 acres of Gethsemane Cemetery, owned by respondent, and levied on by appellant with a special assessment, appropriated to use as a cemetery and therefore exempt from the special assessment under the provisions of Minn.Stat. § 307.09, subd. 1 (1988)?

## ANALYSIS

Minn.Stat. § 307.09, subd. 1 provides:

Subd. 1. All lands, not exceeding 100 acres in extent, and in the case of cemeteries owned and managed by religious corporations, or corporations solely owned and controlled by and in the interest of any religious denomination, 300 acres in extent, so laid out and dedicated as a private cemetery, *shall be exempt from public taxes and assessments,* and shall not be liable to levy and sale on execution, or to be applied in payment of the debts of any owner thereof, *so long as the same remains appropriated to the use of a cemetery* * * *.

(emphasis added). At the trial court hearing, both parties moved for summary judgment asserting each was entitled to judgment as a matter of law on whether or not the subject 45 acres of Gethsemane Cemetery were appropriated to cemetery use. The parties do not dispute significant underlying facts. In cross-motions for summary judgment, each asserted to the trial

court that the matter was ripe for summary judgment.

On review of a grant of summary judgment, this court must determine whether there are any material facts in dispute and whether the trial court erred in its application of law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The trial court entered summary judgment in favor of respondent finding the west 45 acres of Gethsemane Cemetery appropriated to cemetery use and thus tax exempt under Minn.Stat. § 307.09, subd. 1. The trial court's decision was based on its application of statute and case law to undisputed facts. As such, its decision was a conclusion of law which does not bind this court upon review. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn. 1977).

Both parties presented to the trial court their arguments on whether the west 45 acres of Gethsemane Cemetery was used for cemetery purposes and thereby exempt from special assessments by Minn.Stat. § 307.09. While there are no reported cases discussing Minn.Stat. § 307.09, there are pertinent cases interpreting the virtually identical statute, Minn.Stat. § 306.14 (which applies to public cemeteries). *See e.g., Grand View Park Cemetery v. City of Edina,* 257 N.W.2d 329 (Minn.1977); *State v. Ritschel,* 220 Minn. 578, 20 N.W.2d 673 (1945). Minn.Stat. § 306.14 provided the following from 1941 to 1986:

Subd. 1. The lands and property of any such cemetery association shall be exempt from all public taxes and assessments, and shall not be sold on execution against such association or any lot owner. The owners of cemetery lots, their heirs or legal representatives, *may hold the same so exempt so long as they remain appropriated to the use of a cemetery;* * * *

(Emphasis added). In 1988, Minn.Stat. § 306.14 was amended to read:

Subd. 1. The lands and property of any such cemetery association are exempt from all public taxes and assessments, and shall not be sold on execution

against the association or any lot owner. The owners of cemetery lots, their heirs or legal representatives, *may hold the lots exempt from taxation so long as the lots are used for a cemetery.* * * * (Emphasis added). The historical analysis of the amendment provides that it was not intended to alter the meaning or effect of the statute:

> The 1988 amendment revised this section. * * * This amendment was contained in a revisor's bill which by its title purported to remove redundant and obsolete language, to simplify grammar and syntax, and to improve language style without causing changes in meaning.

Minn.Stat.Ann. § 306.14 (Supp.1991). Since the public purposes and effects of Minn.Stat. § 306.14 and Minn.Stat. § 307.09 are the same, *Grand View Park* and *Ritschel* have instructional value for this review.

Appellant relies on *State v. Ritschel,* 220 Minn. 578, 20 N.W.2d 673 (1945) for the proposition that burials must *presently* be taking place on a parcel of land to be exempt from assessments. "Presently" is too broad, and the holding in *Ritschel* does not state present "burials" are essential but rather states that present "burial purposes" are the issue. Ritchel does contain the following language:

> The purpose of granting exemption from taxation to cemeteries is the attainment of [the statutory] purposes. These can be accomplished only by actual, present use of the property for burial purposes. Mere ownership or holding of property without such use does not accomplish the objects which it is the purpose to accomplish by granting the tax exemption.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Intention to use land for burial purpose at some future time * * * is not sufficient to satisfy the requirement of an actual and present use for such purpose.

*Id.,* 220 Minn. at 585, 589, 20 N.W.2d at 676, 678. However, appellant applies these statements outside the factual context of *Ritschel.*

In *Ritschel* only ⅛ of the entire parcel of land which was asserted by the cemetery association as being platted for use as a cemetery had been registered as burial lots; from the time of purchase until the time of trial, *all the land had been used exclusively as a homestead, truck gardening, and as part of a pasture;* not a single body had ever been buried on the land; *and a city ordinance prohibited the possibility of any burials ever taking place on the land. Id.,* 220 Minn. at 580–81, 20 N.W.2d at 674–75. The only basis for the claimed exemption was the association's assertion that it intended to use the land for cemetery purposes at some time in the future. Because of the city ordinance, the time of this future use was indeterminate, and therefore the land was not used as a cemetery and was not exempt from taxation. *Id.,* 220 Minn. at 590, 20 N.W.2d at 679.

*Ritschel* is distinguishable from the present case on its facts. The land of Gethsemane Cemetery has all been platted as cemetery, the parties agree that the subject 45 acres have never been used for anything inconsistent with its use as a cemetery, and that the land is honestly being held by the Diocese for use in the future as a cemetery. Appellant's only contention here is that the 45 acres in question should not be exempt *until it is actually used* for burials at some future date. However, *Ritschel* explicitly recognizes that land can be exempt even if it is not presently being used for burials when it states:

> As a practical matter, a cemetery association must have on hand for sale to the public lots laid out for burial purposes but not actually occupied as graves. The word *cemetery* comprehends a place where burials have been made and will continue to be made in the future. *Owning and holding land for such future needs, if reasonable in amount and not beyond reasonable anticipation, are incidental to operating a cemetery.*

*Id.,* 220 Minn. at 589, 20 N.W.2d at 678–79 (emphasis added). *Ritschel* does not support a conclusion that the trial court's finding the subject 45 acres of Gethsemane Cemetery appropriated to cemetery use was erroneous as a matter of law. The

turning point in *Ritschel* (disallowing exemption) was the undisputed use of the land in issue for private, non-religious, economic purposes. Here the facts are opposite. No inconsistent use has ever been made of the land and none is planned. In fact, *Ritschel* supports respondent's argument and the trial court's conclusion wherein it states:

> The word cemetery comprehends a place where burials have been made and will continue to be made in the future. Owning and holding land for such future needs, if reasonable in amount and not beyond reasonable anticipation, are incidental to operating a cemetery.

*Id.*, 220 Minn. at 589, 20 N.W.2d at 678–79.

In *Grand View Park Cemetery v. City of Edina*, 257 N.W.2d 329 (Minn.1977), there were four parcels held by the cemetery association which the City of Edina argued were in whole or in part not tax exempt. For three of the parcels, the supreme court found that there were competing considerations concerning the question of whether the lands were appropriated to cemetery use. The supreme court held that having balanced these competing concerns, "[t]he district court was therefore justified in holding the entire parcel exempt, despite the presence of contrary factors." *Id.*, 257 N.W.2d at 334. In the present case, there are also competing factors, and based on the record as a whole, the trial court's finding that the subject 45 acres of Gethsemane Cemetery was appropriated to cemetery use was not erroneous as a matter of law.

Factors in *Grand View Park* which weighed in favor of taxation were non-cemetery use of the lands as a private residence, commercial non-cemetery operations, and the property had remained in its natural state without extensive development. The factors which weighed in favor of exemption were integrity of the entire tract as a cemetery of reasonable size and configuration, feasible and realistic expectation of use for burial in the reasonably foreseeable future, and to carve an integrated cemetery parcel into taxable and nontaxable sections would be impractical and would likely result in continuous debate or litigation between the city assessor and the cemetery. *Id.*, 257 N.W.2d at 333–35.

In the present case, the 45 acres of Gethsemane Cemetery are part of an 81 acre cemetery of reasonable size and configuration, the land has been platted and dedicated exclusively as a private cemetery, there is a reasonable probability the burial rate will rise in the future making the land necessary for burial within as little as 30 years, the land *has never* been used for anything inconsistent with cemetery purposes, and the parties agree the land is intended for cemetery purposes. Here, the facts favoring the trial court's conclusion are even stronger than in *Grand View Park* because here we have no non-cemetery use of the land at all. The trial court in its memorandum balanced competing factors and found the appropriated use of the 45 acres allowed for exemption from special assessment.

Appellant's challenge on appeal focuses primarily on the mathematics of future available burial sites. At the exact same burial rate, the remaining 29,000 burial plots will be exhausted in 124 years. Appellant argues this math shows Gethsemane Cemeteries' westerly 45 acres is not appropriated for cemetery use in the reasonable and definite future. The argument is not strong because it is only based on today's burial rate, and the parties agree the future burial rate extending into the next few decades is subjective. We find the trial court made a proper judgment call.

The trial court properly took notice of the decrease in available Catholic burial sites within the Twin Cities, the need to shift the burden of future Catholic burials in part to Gethsemane Cemetery, and the deposition testimony of Howard J. Fox, submitted into the record by appellant. The subject 45 acres of Gethsemane Cemetery could be needed as early as 30 years from now due to a reasonable probability the burial rate will increase in the future. *See e.g., id.*, 257 N.W.2d at 334. *Any* increased burial rate will require the use of

the undeveloped 45 acres at an earlier date than calculated by appellant.

In *Grand View Park,* one of the assessed parcels of land at issue provided an additional 38,000 burial sites. The pre-existing tax exempt land had 12,500 remaining grave sites at a burial rate of 100 per year. Therefore, the additional 38,000 burial sites on the assessed parcel of land would not be required for 125 years (assuming the "unassumable," namely that the burial rate would stay exactly the same to the year 2100). Yet the court in *Grand View Park* held the parcel of land to be appropriated to use as a cemetery and therefore tax exempt. The *Grand View Park* statistics compare to the statistics for the 45 acres in Gethsemane. In *Grand View Park* the Minnesota Supreme Court upheld the trial court:

> The trial court clearly had in mind, however, the probability that the burial rate will rise in the future as the expanded population * * * ages and the death rate increases. While it is true that mere holding of land for future cemetery use is not sufficient, it is also true that provision must be made for the future needs of the public. It does not appear that the approximately 38,000 burial sites which would be available for future use are excessive in such a populous area.

*Id.,* 257 N.W.2d at 334. Likewise, in this case, the trial court properly relied on the probability of an increased burial rate in support of its finding the land appropriated to reasonable cemetery use.

We note in passing that appellant attempted to buttress its position by arguing that if tax exempt status were granted to the west 45 acres of Gethsemane Cemetery now, and the land were to be undedicated as a cemetery at some future date, then appellant would be without recourse to recoup previous exempted tax revenues at that later date. This argument is unpersuasive. Appellant suffers no prejudice under that scenario. First of all, all municipalities in the state with public or private cemeteries within its taxing boundaries are treated identical. No one municipality, no one religion is treated any differently than another.

Also, we note that while other types of public and religious property are not generally exempt from special assessment taxes, as public and private cemeteries are, they are uniformly exempt from property taxes. *See* Minn.Const., Art. X, § 1; Minn.Stat. § 272.02 (1990). We take judicial notice of the existence within the City of New Hope of public schools, churches of various denominations, and public property such as parks and government buildings which are exempt from property taxation. The same is true of every municipality in the state and the exemption is applied uniformly. Thus, property tax exemption is a parallel to the broad exemption from special assessments for all cemeteries. All the above named exempt properties could, at the option of those in control, be removed from exempt status, torn down, and the property sold, as some are, from time to time to make way for private development. In all those instances, the taxing municipalities cannot recover retroactive property taxes from years when the exemption existed. The "possibility" of a future change in taxable status is irrelevant when considering whether property meets the *present* criteria for tax exempt status under Minnesota law. The trial court properly made its ruling on present statutes and case law.

## DECISION

The trial court properly applied statute and case law when it found the west 45 acres of Gethsemane Cemetery appropriated to cemetery use and exempt from appellant's special assessment for improvements to Boone Avenue.

Affirmed.